James T. CRESCI, Petitioner,

v.

Wilbur SCHMIDT, Secretary for the Department of Health and Social Services for the State of Wisconsin, Respondent.

Civ. A. No. 75–C–32.

United States District Court,
E. D. Wisconsin.

Sept. 29, 1976.

As Modified Nov. 15, 1976.

Charles Bennett Vetzner, Post-Conviction Defense Project, Madison, Wis., for petitioner.

Charles R. Larsen, Asst. Atty. Gen., Madison, Wis., for respondent.

DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a petition for a writ of habeas corpus in which the petitioner alleges that the revocation of his parole was arbitrary and capricious, and that he possessed a constitutional right to the assistance of retained counsel at the revocation hearing.

The threshold issue of mootness having been decided in favor of the petitioner by the decision and order of this court of November 25, 1975, 403 F.Supp. 348, the petition is now before the court on its merits. Jurisdiction is based on 28 U.S.C. § 2241. For the reasons hereinafter stated, the petition is granted.

The petitioner was convicted of two counts of armed robbery and sentenced to ten years on each count, the sentences to be served concurrently. On December 22, 1970, the petitioner was paroled on mandatory release and signed a standard parole agreement on that date. On June 19, 1971, the petitioner was arrested in Milwaukee County for operating a vehicle without a license and obstructing, the latter charge resulting from the petitioner's alleged use of a false name and address when questioned by the officer who stopped him. The former charge was subsequently dismissed when the petitioner produced a valid driver's license.

On June 21, 1971, Bruce Larsen, the petitioner's parole agent informed the petitioner that, as part of the continuation of his parole status, he was to sign an amended parole agreement which provided, in relevant part, that the petitioner would not travel out of Milwaukee County without the permission of the parole agent.

On June 25, 1971, the petitioner was picked up by three friends at his home. According to the testimony elicited at the revocation hearing, the four individuals commenced to drive around the city of Milwaukee, petitioner believing that they were just going to drive around town. While still in Milwaukee County, the petitioner fell asleep in the back seat of the car and was not awakened until he and his companions had arrived at the parking lot of a store in Sheboygan, Wisconsin. Upon realizing that he was in Sheboygan, the petitioner told his companions for the first time that he was not permitted to leave Milwaukee County without the permission of his parole agent, and that he must return to Milwaukee immediately. While still in Sheboygan, the petitioner and his friends

stopped to have lunch. As they were departing from the restaurant, petitioner was arrested by Sheboygan Police on an unrelated charge.

On July 30, 1971, an administrative hearing was held for the purpose of receiving testimony concerning a possible revocation of petitioner's parole. Petitioner retained an attorney who was permitted to attend and observe the hearing, but was neither permitted to participate in the hearing nor to assist petitioner in any way.

On the recommendation of the hearing examiner, the respondent, Wilbur Schmidt, issued a formal revocation order.

On September 3, 1971, the petitioner filed a petition for a writ of certiorari with the Honorable Herbert J. Steffes, Circuit Court for Milwaukee County, challenging the revocation of his parole as being arbitrary and capricious. Relief was denied on October 20, 1971.

The Supreme Court of Wisconsin affirmed the Circuit Court's denial of certiorari. *State ex rel. Cresci v. Schmidt,* 62 Wis.2d 400, 215 N.W.2d 361 (1974).

■ The respondent contends that the petitioner has failed to raise a federal constitutional question by alleging that the revocation was arbitrary and capricious. The court agrees.

■ In order for the sufficiency of the evidence to raise a federal constitutional question, the state proceeding must have been so totally devoid of evidence in support of conviction or revocation, or so prejudicial, that it denied due process. *Taylor v. State of Minnesota,* 342 F.Supp. 911 (D.C. Minn.1972), affirmed 466 F.2d 1119, cert. den. 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689.

The petitioner was charged with violating the conditions of his parole by operating a motor vehicle without the advance permission of his supervising agent and without an operator's license; by giving a false name and producing another person's operator's license to an officer; and by traveling out of Milwaukee County in direct vio-

lation of his amended parole agreement of June 22, 1971. The respondent admits in his memorandum in support of his return that the charges related to the operation of the motor vehicle were without foundation and should not have been considered in determining whether petitioner's parole should be revoked. However, the respondent contends that the record indicates the hearing examiner's awareness of this defect and that he did not consider these charges in determining whether parole should be revoked.

Whether the hearing examiner considered the defective charges or not, his decision to revoke petitioner's parole is supported by the admission of the petitioner to leaving Milwaukee County without obtaining the permission of his parole agent and the suspect credibility of the testimony of the petitioner's companions, an evaluation the examiner was entitled to make. In light of this, it cannot be said that the record is so devoid of evidence as to constitute a denial of petitioner's due process.

The petitioner was denied fundamental fairness at the revocation hearing. *Shead v. Quatsoe,* 486 F.2d 694 (7th Cir. 1973) provides that:

> " * * * Nevertheless, the basic analysis in the opinion indicates that if 'fundamental fairness—the touchstone of due process' was offended by a revocation which happened to precede the date of the *Scarpelli* decision, the date of the revocation hearing should not necessarily foreclose relief. Just as the wide variations in the peculiarities of particular cases foreclose the use of an inflexible rule for deciding the merits of a claim that counsel was improperly refused, we believe that the fundamental fairness concept forecloses reliance on the date of the *Scarpelli* decision as an inflexible bar to relief." (p. 695)

In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court determined that " * * * the decision as to the need for [appointed] counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." (p. 790, 93 S.Ct. p. 1763). *Scarpelli* then outlined the instances in which counsel should be appointed.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case, in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." (p. 790–791, 93 S.Ct. p. 1764)

■ Although *Scarpelli* set guidelines for the *appointment* of counsel not the *retention* of counsel, the fundamental fairness concept relied on in *Shead* applies to both situations. The guidelines established in *Scarpelli* may also aid in the decision as to when fundamental fairness requires the assistance of retained counsel.

■ The petitioner had a colorable claim that he either lacked the necessary intent to commit the violation or that his lack of intention was a mitigating circumstance

making revocation inappropriate. It is apparent from the record, that the hearing examiner's evaluation of the credibility of petitioner's witnesses was crucial to the decision to revoke petitioner's parole. The presence of counsel would have better enabled the petitioner to establish the credibility of his witnesses and prevent the severe deprivation of liberty he has suffered.

This is not to say that the petitioner had an absolute, constitutional right to the assistance of retained counsel. The court holds that the concept of fundamental fairness advanced in *Shead,* supra, required this petitioner, on these facts, to have the assistance of retained counsel at the revocation hearing.

For the foregoing reasons,

IT IS ORDERED that the petition is granted and the petitioner's parole revocation shall be a nullity unless, within 30 days from the entry of this order, petitioner is granted a new hearing at which time he has the right to the assistance of any counsel he chooses to retain.

IT IS FURTHER ORDERED that any new hearing shall be conducted in accordance with the guidelines set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* supra, except that no preliminary revocation hearing need be held.