STATE, Respondent, v. EVANS, Appellant.†

*No. 76–179–CR. Argued March 3, 1977.—Decided April 19, 1977.*
(Also reported in 252 N. W. 2d 664.)

† Motion for rehearing denied, without costs, on June 14, 1977.

For the appellant there were briefs by *Thomas J. Balistreri* and *Shellow & Shellow* of Milwaukee, and oral argument by *Mr. Balistreri*.

For the respondent the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   This is an appeal from a judgment of the circuit court which affirmed an order of the Wisconsin Department of Health and Social Services (the Department) revoking Charles Evans' probation and returning him to the trial court for sentencing.  The question is whether an otherwise valid basis for revocation—probationer's failure to account for his whereabouts and activities—is made invalid because the refusal is based on probationer's invocation of the fifth amendment privilege against self-incrimination.

We resolve this issue by holding that statements or the fruits of statements made by a probationer to his

probation agent or in a probation revocation hearing[1] in response to questions which, as here, are the result of pending charges or accusations of particular criminal activity, may not be used to incriminate the probationer in a subsequent criminal proceeding. We reaffirm past decisions holding that a probationer's refusal to account for his whereabouts and activities is a serious violation of probation conditions which may merit revocation.[2] We reverse the judgment affirming revocation and direct the circuit court to remand to the Department which may, if it chooses, hold another hearing subject to the limitations of this opinion.

On June 4, 1974 Charles Evans (the probationer) was convicted after a plea of guilty to possession of obscene material contrary to sec. 944.22, Stats. 1973.[3] He was fined one hundred dollars and placed on probation for two years. On December 3, 1975 probationer was charged in a criminal complaint with numerous offenses involving conspiracy to deliver cocaine and marijuana. The complaint alleged the conspiracy took place on November 28 and November 29, 1975 in the city of Milwaukee.

The charges came to the attention of the Bureau of Probation and Parole and a supervising agent ordered two other agents assigned to probationer to obtain an accounting from him concerning his activities on the two days of the alleged conspiracy. The agents interviewed him in the Milwaukee County jail on December 5, 1975. Mr. Evans' counsel, Mr. James Glover, was present. Mr.

---

[1] What we say in this opinion applies also to parole revocation.

[2] *E.g., State ex rel. Cutler v. Schmidt*, 73 Wis.2d 620, 244 N.W.2d 230 (1976).

[3] "944.22 *Possession of Lewd, Obscene or Indecent Matter.* Whoever knowingly has in his possession any lewd, obscene or indecent written matter or a lewd, obscene or indecent picture may be fined not more than $1,000 or imprisoned in the county jail not more than one year or both."

Evans refused to give an accounting of his activities on being advised by his counsel that he should refuse to answer on the ground that his answers might incriminate him.

As a result of this interview the probation agents charged that:

"On 12–5–75 client refused to provide an account of his whereabouts and activities during the time period of 11–28–75, thru 11–29–75. This is in direct violation of probation, Rule #3, of the Probation Agreement signed by the client on 6–4–74."[4]

At a hearing mandated by *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed.2d 656, 93 S. Ct. 1756 (1973), it was determined that probationer did not require the assistance of counsel at the revocation hearing. One of the agents described the probationer, age twenty and a first-semester college student, as a "rather bright young man, able to comprehend what's going on." The hearing examiner concluded that probationer could represent himself because the state would not be represented by legal counsel at the revocation hearing and also because there was no factual defense to the charge of refusal to advise the probation agent of his whereabouts on the two days in question.

At the final revocation hearing Mr. Evans was once again given the opportunity to account for his activities on the two days in question and he again refused on fifth amendment grounds. Attorney Glover was present at the revocation hearing because he was a witness to the jail interview where the alleged probation violation of refusal to cooperate with the probation agents took place. Mr. Glover, however, was not permitted to assist the

[4] "*Wisconsin Department of Health and Social Services. Agreement.* . . . (3) I will keep the probation and parole agent informed of my whereabouts and activities at all times and I will submit such reports as may be required. . . ."

probationer as counsel. It was not disputed that other than on the one occasion of his alleged lack of cooperation at the jail interview, Mr. Evans had been responsive to supervision and had carried out the terms of the probation agreement.

Following the hearing, the Department revoked the probation of the probationer and returned him to the trial court for sentencing. The probationer proceeded by writ of certiorari to the circuit court. The writ was quashed on July 13, 1976 and judgment entered affirming the decision of the Department revoking the probation of the probationer. The probationer was sentenced to six months in the county jail on the charge of possession of obscene matter.

The liberty enjoyed by a probationer is, under any view, a conditional liberty. It is conditioned on adhering to the conditions of probation as set forth in the probation agreement. His position is not that of the non-convicted citizen. Whether sentence is withheld or imposed and stayed, a convicted person's status as a probationer "is a matter of grace or privilege and not a right," *Garski v. State,* 75 Wis.2d 62, 67, 248 N.W.2d 425 (1977), made possible by the legislature.

Wisconsin passed its first probation law in 1909. As originally passed, probation was not available to one convicted of a felony the punishment for which exceeded ten years. C. 541, Laws of 1909. The law also limited probation only to those never before convicted of a felony or misdemeanor. In 1913 prior conviction for a misdemeanor was eliminated as a bar to probation. C. 136, Laws of 1913. Subsequent modifications eliminated the ten-year punishment criterion but excepted convictions for certain enumerated felonies from the benefits of the act. Prior conviction of a felony as a bar to probation was also eliminated. C. 150, sec. 2, Laws of 1931. In

1947, the probation statute was made generally applicable to all felonies except abandonment. C. 477, Laws of 1947.

The theory of probation contemplates that a person convicted of a crime who is responsive to supervision and guidance may be rehabilitated without placing him in prison. This involves a prediction by the sentencing court society will not be endangered by the convicted person not being incarcerated. This is a risk that the legislature has empowered the courts to take in the exercise of their discretion. To be effective, there must be adequate supervision to guide the probationer into useful and productive activities and away from further criminal activity and to insure that society's interest in its own safety is not jeopardized.

If the convicted criminal is thus to escape the more severe punishment of imprisonment for his wrongdoing, society and the potential victims of his anti-social tendencies must be protected. Supervision must be such as to most likely assure such result. The probation officer cannot maintain a personal surveillance over each probationer placed under his charge. He must depend on reports from others, oftentimes anonymous, which the officer must check out. One of the ways is to confront the probationer with the information and discuss it with him, or to ask the probationer about his activities, associations, and whereabouts at particular times. If the probationer refuses to discuss his activities or answer specific questions, such refusal under the probation agreement may be grounds for revocation.

The absolute obligation to keep one's probation agent informed of one's whereabouts and activities when requested is the very essence of the system of probation.

This court adopted Standard 3.2 of the American Bar Association's Standards Relating to Probation (approved Draft 1970) relating to conditions of probation in *State*

*v. Garner*, 54 Wis.2d 100, 105, 106, 194 N.W.2d 649 (1972). Section 3.2(c)(i) provides that "cooperating with a program of supervision" is an appropriate condition to be imposed. Failure to advise of one's activities or whereabouts at any given time on request is a serious failure of cooperation. This is true regardless of whether the failure is predicated on the fear statements made will be self-incriminating or on the fear that such statements would reveal a non-criminal violation of probation conditions. But the situation in which the probationer fears self-incrimination in a criminal proceeding entails another consideration, that, "(n)o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. Amend. V.

The United States Supreme Court in the case of *Lefkowitz v. Turley*, 414 U.S. 70, 38 L. Ed.2d 274, 94 S. Ct. 316 (1973) said that the fifth amendment,

". . . not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." 414 U.S. at 77.

In a series of opinions, that court has made clear that the fifth amendment cannot be vitiated by imposing non-criminal penalties as a price of its exercise.

In *Spevack v. Klein*, 385 U.S. 511, 87 S. Ct. 625, 17 L. Ed.2d 574 (1967) the disbarment of an attorney was held to be an unconstitutional infringement on the fifth amendment. The attorney refused on the ground of privilege to produce certain records pursuant to a subpoena duces tecum and to testify at a judicial inquiry. The consequent disbarment was held unconstitutional because "(i)n this context 'penalty' is not restricted to

fine or imprisonment. It means, as we said in *Griffin v. State of California*, 380 U.S. 609 . . . the imposition of any sanction which makes assertion of the Fifth Amendment Privilege 'costly.' " 385 U.S. at 515.

In *Garrity v. State of New Jersey*, 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed.2d 562 (1967) police officers suspected of ticket fixing were given the choice under a New Jersey statute of incriminating themselves or forfeiting their jobs. The statements made under these conditions were held inadmissible. The Supreme Court said, "There are rights of constitutional stature whose exercise a state may not condition by exaction of a price." 385 U.S. at 500.

A New York City policeman refused to waive his privilege against self-incrimination before a grand jury in *Gardner v. Broderick*, 392 U.S. 273, 20 L. Ed.2d 1082, 88 S. Ct. 1913 (1968). He was discharged as a consequence, pursuant to the New York City Charter. The court, following *Garrity*, invalidated the action. A similar charter provision applicable to sanitation men was invalidated the same day in *Sanitation Men Asso. v. Commissioner*, 392 U.S. 280, 20 L. Ed.2d 1089, 88 S. Ct. 1917 (1968).

Another noncriminal penalty for exercise of the fifth amendment was struck down in *Lefkowitz, supra*. A New York statute required public contracts provide for their own cancellation in the event the involved contractor refused to waive his immunity or to answer questions when called to testify concerning the contracts. In addition, the contractor would be disqualified from further business with the state for five years. The court acknowledged the state has a strong and legitimate interest in maintaining the integrity of its civil service and of its transactions with independent contractors. But, said the court, "claims of overriding interests are not unusual in Fifth Amendment litigation and they have not fared well." 414 U.S. at 78.

Finally, this court, in *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974) disapproved a sentencing decision influenced in part by the defendant's failure to show remorse or acknowledge responsibility. This court said:

". . . (T)he state argues that, if remorse may be used in mitigation, lack of remorse may properly be considered in sentencing. We do not agree. The rights against self-incrimination . . . are based upon the founding fathers' fear of governmental coercion. The Bill of Rights confers no rights upon the state, but limits the power of the state. The exercise of the right against self-incrimination is a one-way street. If the defendant exercises that right, he may not be penalized for it, even after a jury's determination of guilt."

Probation conditions may proscribe activity which is not in itself violative of the criminal law.[5] While it is clear a probationer cannot be penalized for invoking his privilege against self-incrimination, it would be an

---

[5] Part of the terms of probation here are to be found in the agreements of June 4, 1974 and June 21, 1974 as follows:

". . .

"4. I will secure advance approval from the probation and parole agent, in writing if practicable if at any time I wish to:

"a. Purchase or operate a motor vehicle.
"b. Incur debts whether by borrowing money or installment buying.
"c. Take on additional responsibilities such as marrying.
"d. Change employment or place of residence.
"e. Leave the state.
"f. Own or carry firearms or other weapon.

"5. If I prove myself unsuited to supervision, I will hold myself ready to be placed in the institution to which I was committed, returned to the court which placed me on probation, or to the institution from which I was paroled.

"6. I will be guided by such specific instructions as may be issued by the probation and parole agent with regards to companions, hours, intoxicants, medical attention, family responsibilities and support of self, court obligations, or other special restrictions as follows: . . . ."

absurd result to say: "You may be revoked and sent to prison for refusal to answer questions concerning non-criminal but proscribed activity, but you may not be revoked for refusal to answer questions about possible criminal activity."

The state may, however, compel a person's testimony if he is protected by a grant of immunity that renders the compelled testimony inadmissible against the witness in a criminal prosecution. *Kastiger v. United States,* 406 U.S. 441, 32 L. Ed.2d 212, 92 S. Ct. 1653 (1972). *Accord: State v. Hall,* 65 Wis.2d 18, 27, 221 N.W.2d 806 (1974). In *Baxter v. Palmigiano,* 425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed.2d 810 (1976) the court said:

"Prison disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required 'to waive such immunity.' *(Lefkowitz v. Turley),* 414 U.S. 70, 85, 38 L. Ed.2d 274, 94 S. Ct. 316 (1973)). . . ." 425 U.S. at 316, 96 S. Ct. at 1557.

In order to guarantee the fifth amendment rights of a probationer or a parolee and at the same time to preserve the integrity of the probation system, we hold that upon timely objection in criminal proceedings, the testimony of a probationer or a parolee given in response to questions by a probation or parole agent or at a probation or parole revocation hearing, which questions are prompted by pending charges or accusations of particular criminal activity, or any evidence derived from such testimony, is inadmissable against the probationer or parolee during subsequent proceedings on related criminal charges except for purposes of impeachment or rebuttal where his testimony at the criminal proceeding

is clearly inconsistent with the statements made previously. In such case the trial court may admit the revocation testimony or its fruits for the purpose of showing the probability that the probationer or parolee has committed perjury. *Cf., People v. Coleman,* 13 Cal.3d 867, 533 P.2d 1024, 120 Cal. Rptr. 384 (1975.)

Because the defendant here was not made aware that any statements he made could not be used against him in a subsequent criminal proceeding arising out of the same fact situation and that thus his fifth amendment privilege against self-incrimination would not be violated by enforcing the rule that he must be accountable, this case must be returned to the Department for the purpose of conducting a revocation hearing if the Department so desires. At that time the defendant may be properly advised with respect to the limited use immunity herein declared.

Mr. Evans also charged that revocation for mere refusal to give information requested in this case amounted to abuse of discretion. Had sufficient explanation been given to the defendant with regard to the type of immunity herein granted, then refusal to cooperate would be grounds for revocation.

It is also contended refusal to permit Mr. Evans to be represented by his retained attorney at the probation revocation hearing deprived him of due process of law. The criteria to be applied by the revocation authority in deciding whether to allow counsel were set out in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed.2d 656 (1973) :

"Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probation or parolee makes

such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself." 411 U.S. at 790–791.

These criteria were not met under the particular facts of this case. The factual occurrence of the probation condition violation was never disputed. Furthermore, the record shows that the alleged mitigating factors were amply explored by the hearing examiner. The revocation hearing was expanded to allow Attorney Glover to testify as to the reasons why his client did not answer the questions posed by the probation agents. We also note that counsel was present at the time of the jail interview and this was the crucial point at which the legal decision whether to invoke the fifth amendment was made.

Mr. Evans' argument that retained, as opposed to appointed counsel should be permitted to be present as a matter of course was squarely rejected in *State ex rel. Cresci v. H&SS Department,* 62 Wis.2d 400, 413, 414, 215 N.W.2d 361 (1974), *habeas corpus granted* on other grounds, 419 F. Supp. 1279 (E.D. Wis. 1976). This court stated such a holding would be violative of the equal protection clause of both the federal and state constitutions.

*By the Court.*—Judgment reversed and cause remanded to the circuit court to remand to the Department of Health and Social Services.

ABRAHAMSON, J. *(concurring)*.

The majority opinion properly stresses the need for the probation officer to maintain supervision over the probationer and the duty of the probationer to keep the probation agent informed of his whereabouts. The court then balances this societal need—and the right of a probationer to speak in his own behalf at a probation hearing—with the defendant's fifth amendment protection against self-incrimination.

The court concludes that the solution is to exclude the defendant's statements to his parole or probation officer from use at a criminal trial. This solution is a reasonable one, though not free from difficulties.[1] The State obtains the information it needs for the operation of its parole and probation systems and can introduce at a criminal trial evidence it obtained through its own investigative efforts.

I wish to express two concerns about the majority opinion.

I.

The majority holds as admissible the testimony of a probationer or parolee (and any evidence derived therefrom) against the probationer or parolee in subsequent criminal charges "for purposes of impeachment or rebuttal where his testimony at the criminal proceeding is clearly inconsistent with the statements made previously.

[1] For a discussion of the difficulties *see* Note, *Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-incrimination Limitations,* 74 Mich. L. Rev. 525 (1976) ; Comment, *The Supreme Court of California 1974–1975,* 64 Calif. L. Rev. 239, 516–531 (1976).

For a discussion of the practice of revocation of probation because of probationer's criminal conduct *see* Dawson, *Sentencing: The Decision as to Type, Length, & Conditions of Sentence,* 151–155 (1969).

In such case the trial court may admit the revocation testimony or its fruits for the purpose of showing the probability that the probationer or parolee has committed perjury. *Cf. People v. Coleman,* 13 Cal.3d 867, 533 P.2d 1024, 120 Cal. Rptr. 384 (1975)."[2]

In the *Coleman* case, the California Supreme Court discussed the limitations on the prosecution's use of defendant's testimony at a probation revocation hearing for impeachment purposes at the criminal trial in order to ensure that the probationer's privilege against self-incrimination is honored.[3] Our court in *Wold v. State,*

[2] It should be noted that the *Coleman Case* limited the exclusionary rule to testimony of a probationer at the probation revocation hearing. The California Supreme Court refused to apply the exclusionary rule to testimony of a probationer adduced 'at the probationer's preliminary "prerevocation" hearing. 120 Cal. Rptr. at 406.

[3] "It should be noted that the mere fact of the probationer's taking the stand at his trial does not open the door to prosecutorial use of his revocation hearing testimony. The probationer may well have testified truthfully and incriminatingly at his revocation hearing, and yet testify truthfully and exculpatorily at his trial by carefully avoiding contradiction of his revocation hearing testimony. In such an instance, the prosecution cannot seek on cross-examination to go beyond the scope of the probationer's direct testimony by asking him either to admit the truth of or perjuriously to deny his admissions at the revocation hearing. [Citations omitted.] To allow the prosecution to elicit expected denials of prior admissions as a strategem for placing before the trial court inculpatory evidence placed in the prosecution's hands by the probationer himself at his revocation hearing, would eviscerate the ameliorative effect of the exclusionary rule announced herein. That rule seeks to encourage frank disclosures by a probationer at a revocation hearing by assuring him that such candor will not impair his full enjoyment of the policies and protections of the privilege against self-incrimination should the issues at his revocation hearing become the subject of criminal proceedings. Unless the probationer himself broaches the subject by express reference to or contradiction of his revocation hearing testimony, he is entitled to have those proceedings kept entirely separate from his

57 Wis.2d 344, 356, 204 N.W.2d 482 (1973), also limits the use of defendant's statements on impeachment. In *Wold* the court was faced with defendant's statement which was taken "in disregard of his constitutional rights against self-incrimination and to assistance of counsel." Although the statements were inadmissible in the State's case in chief, this court held them admissible for impeachment purposes under certain circumstances, one of which was expressed as follows:

"However evidence excluded on direct should not be used for impeachment unless the accused takes the stand and testifies to matters directly contrary to what is in the excluded statement. The foundation for the use of the impeaching statements must be found in prior testimony."

I do not believe the majority's failure to discuss the use of defendant's statements for impeachment purposes more fully means the majority is deviating from the standards set forth in *Wold,* or repudiating the warnings and concerns expressed by the California Supreme Court.

## II.

Although the majority opinion recognizes the State's need for the probation officer to see the accused promptly, to get information and to initiate proceedings, the court's opinion should not be read as eliminating the possibility of delaying the questioning by the probation officer and the holding of probation revocation proceedings after trial on the criminal charges. Delaying probation proceedings is another way of dealing with the problems raised by concurrent revocation and criminal proceedings. Delaying probation revocation proceedings has been recommended by the American Bar Asso-

trial on related charges. [Citations omitted.]" *People v. Coleman,* 13 Cal. 3d 867, 533 P.2d 1024, 120 Cal. Rptr. 384, 404–405 (1975).

ciation as "ordinarily" advisable where revocation is sought solely because of the probationer's commission of a crime. *See* Standard 5.3 of the American Bar Association's Standards Relating to Probation (Approved Draft 1970). In *People v. Coleman, supra,* the California Supreme Court stressed that the exclusionary rule it had fashioned was not designed to exclude the possibility of delaying probation revocation proceedings. The California Supreme Court noted—and I wish to emphasize here too—that while the procedure of delaying revocation is not without difficulties of its own,[4] in some cases the most desirable method of handling the problems of concurrent criminal and probation revocation jurisdiction may well be to postpone the probation proceedings and to give priority to the criminal prosecution.[5]

---

[4] *See* authorities cited in note 1, supra.

[5] *People v. Coleman,* 120 Cal. Rptr. at 406.