**Jacob EGERSTAFFER,**
**Petitioner-Appellee,**
**Cross-Appellant,**

v.

**Thomas ISRAEL, Respondent-Appellant,**
**Cross-Appellee.**

**Nos. 83–1335, 83–1336.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1983.

Decided Feb. 9, 1984.

---

Daniel O'Brien, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellant.

Charles Bennett Vetzner, Wisconsin State Public Defender, Madison, Wis., for petitioner-appellee.

Before PELL, BAUER and FLAUM, Circuit Judges.

PELL, Circuit Judge.

This case comes to us on an appeal from the part of the judgment and order entered in the district court granting a writ of habeas corpus to a prisoner who challenges the revocation of his state probation. The prisoner cross-appeals from the part of the judgment and order denying his petition for habeas corpus relief.

## I. Facts

On January 8, 1979, petitioner-appellee, cross-appellant Jacob Egerstaffer (petitioner) was convicted in the Circuit Court of Rock County, Wisconsin on charges of receiving stolen goods and possession of marijuana with intent to deliver. Execution of two concurrent five-year prison sentences was stayed, and petitioner was placed on probation for a three-year term. The Wisconsin Department of Health and Social Services, the state probation supervisory agency, revoked petitioner's probation nine months later following an evidentiary hearing at which the following allegations were proven by a preponderance of the evidence: First, on or about February 1, 1979, less than four weeks after being placed on probation, petitioner pointed a gun at one Duke Koker and forced Koker to surrender $250 in cash, a pair of diamond rings and a cassette tape player. Second, on June 4, 1979, petitioner possessed amphetamines without a prescription in violation of state law. Third, on June 18, 1979, petitioner refused adequately to account to his probation agent for his whereabouts and activities on June 4, 1979.

At petitioner's probation revocation hearing, the Bureau of Community Corrections (the Bureau) proved the factual basis of the first allegation in part by introducing a recorded, unsworn interview with Koker. In the interview, Koker declared that he stole ten grams of amphetamines from petitioner who, in retaliation, beat him, handcuffed him to a table for two days, pointed a gun at his head and coerced him to hand over items of personal property. The Bureau did not produce Koker as a witness because, according to the Bureau, Koker in the meantime suffered a fall which rendered him incompetent to testify. To support this assertion, the Bureau offered a letter from Koker's psychiatrist which stated that Koker's head injuries resulted in severe memory impairment and concluded that Koker was "not competent to testify in a court of law." Petitioner's counsel objected to the admission of any contents of

the tape, but the hearing examiner overruled the objection, finding "good cause to excuse Koker from being present." Several other witnesses testified to the incident. Koker's sister recounted a conversation in which Koker told her that petitioner had beaten him and held a gun to him. She also testified that she had witnessed petitioner's pointing a gun at her brother, but she claimed petitioner was "joking." A second psychiatrist of Koker's related a conversation in which Koker revealed to him the pistol and handcuff incidents. The Bureau's probation agent testified that petitioner had admitted to questioning Koker until he confessed to stealing the drugs, but that petitioner had denied pointing a gun at or handcuffing Koker. Finally, petitioner himself testified that he had a short scuffle with Koker, but he denied participation in the pistol and handcuff incidents.

The revocation hearing revealed the following factual background of the second and third charges. On June 4, 1979, petitioner traveled to Rockford, Illinois to visit his friend James Overturf. Unbeknownst to petitioner, Illinois law enforcement officials had the Overturf house under surveillance. When petitioner arrived, Overturf was not home, but an acquaintance let petitioner into the house, where petitioner waited for Overturf's return. Earlier that day, Overturf had been apprehended by state officials and had consented to a search of his home. State officials conducting the search entered Overturf's house, found petitioner, frisked him for weapons and subsequently discovered a small package in his pocket. The officials seized the package, chemically tested its contents and discovered that the contents were amphetamines. Upon returning from Rockford, petitioner consulted a lawyer representing him in a separate child custody suit and that lawyer, in petitioner's words, cautioned him "not to say anything else [to officials] because otherwise I could lose my children permanently." The state never brought direct criminal charges against petitioner for possession of amphetamines; however, the Department of Health and Social Services became interested in the June 4 events. On June 7,

the probation agent questioned petitioner about his activities on June 4. Petitioner first denied having been found in possession of amphetamines, then said he might have been in possession but could not reveal where he had obtained the drugs, and finally, after the agent told him that refusal to answer questions could be a ground for probation revocation, petitioner stated that a third party had given him the drugs. On June 18, the probation agent again interviewed petitioner, but petitioner refused to discuss "any criminal activity," on advice of counsel. On June 25, petitioner again met his probation agent, and after several denials finally provided more details about the June 4 incident and admitted that the substance in his pocket had been amphetamines.

Petitioner challenged the probation revocation in state court on three grounds: (1) introduction of the recorded, unsworn interview with Koker violated petitioner's right to confront and cross-examine witnesses and to have only reliable, non-hearsay evidence adduced against him, (2) the hearing examiner incorrectly overruled petitioner's motion to suppress all testimony concerning the substance taken from petitioner on June 4, and (3) there was insufficient evidence to support a finding that petitioner refused at the June 18 interview to provide information about his whereabouts and activities. Both the Wisconsin Circuit Court and the Court of Appeals denied petitioner all relief. The Supreme Court of Wisconsin declined discretionary review.

Petitioner then sued in federal court for habeas corpus relief pursuant to 28 U.S.C. § 2254, and the district court, agreeing with two of petitioner's three arguments, ordered petitioner's release from custody. The court found that the hearing examiner denied petitioner his right to confront and cross-examine adverse witnesses by excusing Koker's presence for less than good cause. The court also found that the chemical analysis report was a fruit of an illegal search and held that the exclusionary rule applies at state probation revocation hearings. The court, however, agreed with the

Government that there was sufficient evidence to support the non-cooperation finding. Each party now appeals from the respective adverse part of the district court judgment and order. The district court stayed its judgment pending the outcome of this appeal.

## II. Discussion

### A. The Use of Hearsay at Petitioner's Probation Revocation Hearing

■ We are unable to agree with the district court's finding that the hearing examiner committed constitutional error when he admitted into evidence Koker's unsworn, recorded interview. The use of hearsay as substantive evidence at a revocation hearing is not per se unconstitutional. This has been the law ever since the Supreme Court's landmark decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In that case, and in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court reasoned that parole and probation revocations are "not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey, supra*, 408 U.S. at 480, 92 S.Ct. at 2599 (parole revocation). *See Gagnon, supra*, 411 U.S. at 781–91, 93 S.Ct. at 1759–64 (applicability of *Morrissey* rationale to probation revocation hearing). More specifically, the Court stressed that the revocation proceeding "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey, supra*, 408 U.S. at 489, 92 S.Ct. at 2604; *see Gagnon, supra*, 411 U.S. at 781–82 & n. 5, 93 S.Ct. at 1759–60 & n. 5. It is true that the Court did recognize the convict's and society's concern for accurate evaluation of the charges brought by the state at the hearing. The Court believed, however, that these often conflicting interests could be reconciled by guaranteeing the convict the right to confront and cross-examine witnesses at the revocation hearing, but permitting suspension of that right when the hearing examiner finds "good cause" for not allowing con-

frontation. *Morrissey, supra*, 408 U.S. at 489, 92 S.Ct. at 2604; *see Gagnon, supra*, 411 U.S. at 782, 93 S.Ct. at 1759.

■ Petitioner lays great stress on the good cause showing, in essence treating such a showing as an absolute prerequisite to the substantive use of hearsay at a probation revocation hearing. Petitioner then contends that the laconic and conclusory letter of Koker's psychiatrist stating that Koker had suffered a head injury which rendered him incompetent to testify is inadequate to support a good cause showing. We are unconvinced by this line of reasoning. The Court established the good cause showing in *Morrissey* to limit the substantive use of unreliable evidence at revocation hearings. However, if the proffered evidence itself bears substantial guarantees of trustworthiness, then the need to show good cause vanishes. This is the rationale underlying *Prellwitz v. Berg*, 578 F.2d 190 (7th Cir.1978), where this court held that "[f]orcing the state to show good cause for not producing the hearsay declarant [when the hearsay bears substantial indicia of reliability] would unwisely extend the limited due process rights of a probationer at the revocation hearing." *Id.* at 192. *Accord United States v. Burkhalter*, 588 F.2d 604, 607 (8th Cir.1978); *United States v. Pattman*, 535 F.2d 1062, 1063 (8th Cir.1976); *United States v. Miller*, 514 F.2d 41, 42–43 (9th Cir.1975). In *Prellwitz*, the state revoked petitioner's probation because he failed to contact his probation agent for over five years. Petitioner argued that his due process rights were violated when the hearing examiner failed to require the probation agent to testify but rather allowed the agent's records to be used to prove the agent made several unsuccessful efforts at locating petitioner. This court approved the use of the hearsay without a showing of good cause to excuse the agent's absence because the hearsay records bore substantial indicia of reliability. The district court interpreted *Prellwitz* to permit abrogation of the good cause showing only when the proffered evidence falls within one of the standard hearsay exceptions, such as the

business records exception. Although this is a plausible interpretation of *Prellwitz,* we see no reason to anchor *Prellwitz* rigidly to a handful of standard hearsay exceptions. Rather, we maintain that a probationer's due process rights will be amply protected whenever proffered evidence bears substantial indicia of reliability. *See United States v. Burkhalter, supra,* at 607.

■ We believe Koker's interview bore such indicia. First, Koker's statements were reasonably detailed. Second, Koker recounted substantially the same facts to three different witnesses; Koker's giving a consistent account of the incident to three individuals in three different settings significantly reduces the probability that the incident is a fabrication. Third, there was eyewitness testimony to corroborate Koker's assertion that petitioner handled a gun during the incident. Fourth and finally, petitioner himself admitted a substantial portion of the facts detailed in the Koker interview.

We caution that the *Prellwitz* rationale does not permit a hearing examiner to admit unsubstantiated or unreliable hearsay as substantive evidence at revocation hearings. Sanctioning the use of such hearsay would certainly eviscerate the safeguards guaranteed probationers by *Morrissey* and *Gagnon.* Nonetheless, where hearsay bears a substantial guarantee of trustworthiness, the flexible revocation proceeding allows its use.

## B. The Presence of an Independent Revocation Ground

Participation in the Koker incident was one of three grounds the Bureau advanced in support of probation revocation. Petitioner's complaints about the remaining two grounds present potentially challenging legal questions. Petitioner claims law enforcement officials searching Overturf's house illegally seized drug evidence from petitioner's person and that the hearing examiner should have applied the exclusionary rule to bar the evidence from petitioner's probation revocation hearing. In response, the Government first argues against extending the exclusionary rule beyond its traditional role in criminal proceedings. Such extension, the Government urges, would result in only minimal deterrent benefits because law enforcement officials already operate under an incentive to obtain evidence in a lawful manner; evidence seized unlawfully will be inadmissible at a state or federal criminal trial. In support of its position the Government cites numerous federal cases. *E.g., United States v. Vandemark,* 522 F.2d 1019, 1021–25 (9th Cir.1975) (not applying exclusionary rule in probation revocation proceeding when law enforcement officials do not know or have reason to believe suspect is a probationer); *United States v. Winsett,* 518 F.2d 51, 53–55 (9th Cir.1975); *United States v. Hill,* 447 F.2d 817, 818–19 (7th Cir.1971) (federal probation case, alternate holding); *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163–64 (2d Cir.1970) (parole revocation). *But see United States v. Rea,* 678 F.2d 382, 388–90 (2d Cir.1982) (distinguishing *Sperling* and applying exclusionary rule to probation revocation proceedings); *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978) (but held in *Grimsley v. Dodson,* 696 F.2d 303, 305 (4th Cir.1982) not to state a principle of federal constitutional law). Second, the Government argues that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) precluded the district court from even hearing petitioner's Fourth Amendment claim because he had a full and fair opportunity to litigate the claim in state court. The definition of "full and fair opportunity" is at issue. In the cases presented for review in *Stone v. Powell,* the state courts had acknowledged the applicability of the exclusionary rule and had heard arguments concerning the legality of the searches. In contrast, petitioner in the case at bar was never effectively able to argue the illegality of the search because the state courts concluded that the fruits of the search were admissible whether the search was legal or illegal. *Grimsley v. Dodson,* 696 F.2d 303 (4th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3118, 77 L.Ed.2d 1371 (1983) nonetheless supports the Government's position that a probation-

er has a full and fair opportunity to litigate his Fourth Amendment claim even when a revocation examiner and state appeals courts refuse to apply the exclusionary rule. *See also United States ex rel. Maxey v. Morris,* 591 F.2d 386 (7th Cir.) (*Stone v. Powell* precludes relitigation of Fourth Amendment claims in federal court even when it would have been futile to litigate the claim in state court due to state court's refusal to follow Seventh Circuit precedent), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979). The Government urges us to adopt the Fourth Circuit's holding in *Grimsley,* while petitioner argues against such adoption because of perceived faults in the *Grimsley* court's reasoning.

Petitioner also challenges the second remaining ground for his probation revocation. He contends that the Bureau failed to establish one of the elements necessary under state law to revoke probation for failure to cooperate, namely petitioner's knowledge that incriminating statements would be inadmissible against him in subsequent criminal proceedings. In *State v. Evans,* 77 Wis.2d 225, 252 N.W.2d 664 (1977), charges in a criminal complaint against probationer came to the attention of a state probation agent who questioned probationer about the alleged illegal activities. Probationer refused to account for his activities following the advice of counsel to remain silent lest his answers be used to convict him on the pending criminal charges. The Department of Health and Social Services revoked probation on the ground that probationer failed to account adequately for his whereabouts when questioned by the probation agent. On appeal, the Supreme Court of Wisconsin held that a probationer's incriminating account of his whereabouts given in response to a probation agent's inquiries would be excluded upon timely objection at probationer's criminal trial except when used for impeachment purposes. *Id.* at 235, 252 N.W.2d at 668–69. Since Evans had not been made aware that statements made to his probation agent would be inadmissible as substantive evidence against him in a subsequent criminal proceeding, the court concluded that the revocation was invalid.

*Id.* at 236, 252 N.W.2d at 669. Petitioner in the case at bar contends that his probation agent questioned him without an accompanying immunity explanation and that the state may not, under *Evans,* properly revoke his probation for failure to account adequately for his whereabouts. The Government urges us to distinguish *Evans.* In *Evans,* petitioner had criminal charges pending against him at the time the probation agent questioned him. In the case at bar, no criminal charges were pending; petitioner refused to answer only because he feared jeopardizing his position in a child custody suit. Accordingly, in the Government's view, the requirement to give an immunity explanation was never triggered. Petitioner argues that the *Evans* decision affords no basis to distinguish between cases where criminal charges are pending against probationer and cases where criminal charges could be brought but have not as yet been formally filed. Moreover, petitioner contends his refusal to discuss "any criminal activity" on advice of counsel was sufficient to invoke the *Evans* requirements.

■ Upon further consideration, however, we find it unnecessary to resolve petitioner's Fourth Amendment and insufficiency of the evidence claims because their resolution is not essential to the disposition of this case. The pertinent habeas corpus statute, 28 U.S.C. § 2254, provides for relief only when custody is "in violation of the Constitution or laws ... of the United States." We have detected no infirmity in the examiner's finding that petitioner violated the conditions of probation by participating in the Koker incident. We conclude that even if we were to resolve the challenges to the other two revocation grounds favorably to petitioner, continued custody based solely on participation in the Koker incident would still be consistent with the Constitution and federal law.

■ We can conceive of three principal arguments which could support a finding that continued custody based solely on participation in the Koker incident is offensive

to the Constitution or federal law. First, participation in such an incident could be viewed as insufficiently severe, as a matter of federal constitutional law, to justify probation revocation. We dismiss this argument out of hand. Stated simply, pointing a gun at another individual thereby forcing him to surrender items of personal property is an egregious violation of the rules and conditions of probation. By participating in the Koker incident, petitioner decidedly demonstrated that conditional liberty, rather than effecting his rehabilitation, was in practice facilitating his lapse into a pattern of criminal activity. Petitioner abused the trust the state placed in him, and revocation based on such a determination does not violate the Due Process Clause or any other constitutional provision.

■ The second argument focuses on the fact that the Wisconsin Department of Health and Social Services based termination of petitioner's conditional liberty on three grounds but did not state whether each ground taken alone would require revocation. The Due Process Clause, one could contend, mandates that petitioner be afforded an opportunity to appear once again before that body and argue that participation in the Koker incident does not by itself justify revocation. This argument, however, assumes that the Due Process Clause requires a hearing to accompany every deprivation of conditional liberty. Yet in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court established that "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, 96 S.Ct. at 902, *quoting Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600. The *Mathews* Court continued, "At some point the benefit of an additional safeguard to the individual affected ... and to society in terms of increased assurance that the action is just, may be outweighed by the cost." 424 U.S. at 348, 96 S.Ct. at 909. In the case at bar, a hearing before the Department of Health and Social Services at best would be of marginal utility. Petitioner already had one hearing before this body, as *Gagnon v. Scarpelli, supra,* mandates. Although petitioner at that hearing never litigated the propriety of revocation based solely on participation in the Koker incident, there is no reasonable likelihood that a second hearing would result in a reversal of the earlier decision. We have already noted that petitioner's participation in the Koker incident makes him a poor probation risk. The probable value of a second hearing before the Department of Health and Social Services is virtually nonexistent, and denial of such a hearing accordingly is consistent with the Due Process Clause.

■ Third, the errors which petitioner claims rendered the second two revocation grounds invalid may have tainted the hearing examiner's finding with regard to the ground we have thus far found valid. Although this type of argument is plausible whenever there are multiple grounds for revocation and some are invalid, in the instant case the argument is unpersuasive. The Koker incident was discrete in time and place from the drug incident and its aftermath. As we read the record, the evidence regarding the substance seized from petitioner's person bore solely on the allegation of amphetamine possession in Rockford on June 4. Similarly, whether petitioner gave his probation agent a satisfactory account of his whereabouts on June 4 had no bearing on the allegation of participation in the Koker incident. Thus, even if the drug evidence were illegally seized and even if the non-cooperation finding were insufficiently supported, those errors would not render infirm the hearing examiner's finding regarding the Koker incident.

## Conclusion

The use of Koker's unsworn, recorded testimony did not violate petitioner's procedural rights at his probation revocation hearing. Accordingly, the judgment and order of the district court granting a writ of habeas corpus with respect to petitioner's claim that he was denied without good cause the right to confront and cross-examine adverse witnesses are reversed. Since

participation in the Koker incident is both an independent and valid ground for revocation, petitioner's continued incarceration violates neither the Constitution nor the laws of the United States. We express no opinion on the merits of petitioner's complaints about the other revocation grounds because they are not essential to the disposition of this case. The parts of the district court judgment and order addressing petitioner's Fourth Amendment and insufficiency of the evidence claims are vacated and the cause is remanded with direction for the district court to dismiss the petition.