STATE of Wisconsin EX REL. Rockie L. DOUGLAS,
Petitioner-Appellant,

v.

Brian HAYES, Administrator, Division of Hearings
and Appeals and Edward F. Wall, Secretary,
Department of Corrections Office of Legal
Counsel, Respondents-Respondents.

Court of Appeals

No. 2014AP2977. *Submitted on briefs August 12, 2015.*
*—Decided October 7, 2015.*

2015 WI App 87

(Also reported in 872 N.W.2d 152.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Matthew S. Pinix* and *Michael G. Soukup* of *Law Office of Matthew S. Pinix, LLC*, Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Daniel P. Lennington*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. Rockie Douglas appeals from a final order of the circuit court affirming the decision of Brian Hayes, Administrator for the State of Wisconsin Division of Hearings and Appeals, revoking Douglas's probation based on his refusal to answer his probation agent's inquiry regarding Douglas's suspected involvement in various criminal activities while on probation. We conclude, pursuant to the Fifth Amendment to the United States Constitution and our supreme court's decision in *State v. Evans*, 77 Wis. 2d 225, 252 N.W.2d 664 (1977), Douglas's probation was improperly revoked because he was not sufficiently informed, prior to his refusal, that he had both use and derivative use immunity related to any information he would have provided the agent. We reverse and remand.

*Background*

¶ 2. Douglas signed a list of "RULES OF COMMUNITY SUPERVISION" he would be required to follow as a condition of probation related to two cases

500

in which he was previously convicted. This document informed Douglas his probation might be revoked if he violated certain rules, including failing to (1) "inform [his] agent of [his] whereabouts and activities as [the agent] directs" and (2) "provide true and correct information verbally and in writing, in response to inquiries by the agent."

¶ 3. While on probation, Douglas was arrested on suspicion that he was involved with various crimes in Wisconsin and Illinois on December 12, 2013. Douglas's probation agent visited him in jail and asked him to provide a statement regarding the crimes. The agent read to Douglas the following language at the top of a department of corrections (DOC) statement form:

> I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.

Douglas refused to provide a statement.

¶ 4. The agent initiated revocation proceedings against Douglas on multiple grounds, including his refusal to provide the requested statement. A hearing was held before an administrative law judge (ALJ) in which the agent confirmed she informed Douglas that his failure to give a statement was "a violation," yet he refused to give a statement. She testified she told Douglas that information he provided could not be used "in a criminal proceeding," and in response to the ALJ's follow-up question "Did you stress that nothing he said would be used against him criminally?" she responded, "Right. I explained that it couldn't be used in criminal court."

¶ 5. The ALJ found the agent credible but dismissed all grounds for revocation, based upon insufficient evidence, except the ground related to Douglas's refusal to provide a statement. Related to that ground, the ALJ found that the agent had read Douglas the warning language at the top of the statement form "and requested that he provide her a statement concerning allegations that he engaged in numerous crimes on December 12, 2013"; the agent "stressed that nothing [Douglas] told her could be used against him in criminal court and that was [sic] a violation not to give a statement"; and Douglas "refused to give a written (or verbal) statement" and "account for his whereabouts and activities," in violation of his rules of supervision.

¶ 6. The ALJ ordered Douglas's probation revoked on both of his cases due solely to his refusal to provide his agent with a statement regarding the Wisconsin and Illinois crimes. Douglas appealed to the Division of Hearings and Appeals (DHA), and Hayes, as DHA administrator, sustained the ALJ's revocation decision. Douglas petitioned the Kenosha county circuit court for a writ of certiorari, arguing, as he does on appeal, that revocation of his probation for refusing to incriminate himself by answering his agent's inquiry violates his rights under the Fifth Amendment. The court denied Douglas's request for a writ and affirmed the decision of the DHA. Douglas appeals.

*Discussion*

■■
¶ 7. On certiorari review of a probation revocation, we review the DHA's decision, not that of the circuit court. *See State ex rel. Greer v. Wiedenhoeft*,

2014 WI 19, ¶ 34, 353 Wis. 2d 307, 845 N.W.2d 373. Review is generally limited to four grounds, but the parties here agree that the only ground relevant to this case is whether the DHA acted in accordance with the law in revoking Douglas's probation. *See State ex rel. Tate v. Schwarz*, 2002 WI 127, ¶ 15, 257 Wis. 2d 40, 654 N.W.2d 438. Because Douglas does not contest any of the DHA's factual findings, we review de novo whether the DHA acted according to law. *Id.*, ¶ 16.

¶ 8. The Fifth Amendment privilege against self-incrimination is " 'as broad as the mischief against which it seeks to guard,' and . . . is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.' " *Estelle v. Smith*, 451 U.S. 454, 467–68 (1981) (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892)). The State acknowledges that "[a] probationer is not required to answer questions 'unless he [or she] was offered immunity as described in *Evans*.' " (Citing *State v. Spaeth*, 2012 WI 95, ¶ 56, 343 Wis. 2d 220, 819 N.W.2d 769). As Douglas points out, and the State develops no argument in dispute, the immunity "described in *Evans*" is both use and derivative use immunity.

██

¶ 9. In *Evans*, our supreme court addressed a situation similar to that in this case—a probationer was suspected of specific crimes, probation agents visited him in jail and sought an accounting of his "whereabouts and activities" on the days during which the crimes took place, and when the probationer "refused to provide an account," the agents moved to revoke his probation. *Evans*, 77 Wis. 2d at

228–29. At his revocation hearing, the probationer in *Evans* again refused to account for his activities on the days in question, and his probation was revoked on that basis. *Id.* at 229–30. The circuit court affirmed the revocation, but our supreme court reversed because the probation agents had not sufficiently informed the probationer of the immunity to which he was entitled. *Id.* at 230, 236. The *Evans* court stated: "*Had* sufficient explanation been given to the defendant with regard to *the type of immunity herein granted, then* refusal to cooperate would be grounds for revocation." *Id.* at 236 (emphasis added). The "type of immunity" granted in *Evans* was identified in the court's holding

> that statements *or the fruits of statements* made by a probationer to his [or her] probation agent or in a probation revocation hearing in response to questions which, as here, are the result of pending charges or accusations of particular criminal activity, may not be used to incriminate the probationer in a subsequent criminal proceeding.

*Id.* at 227–28 (emphasis added; footnote omitted). The court further described the immunity afforded a probationer:

> [T]he testimony[1] of a probationer ... given in response to questions by a probation ... agent or at a probation ... revocation hearing, which questions are

---

[1] In *State v. Thompson*, 142 Wis. 2d 821, 830 n.6, 419 N.W.2d 564 (Ct. App. 1987), we held that "[w]e do not construe [*State v. Evans*, 77 Wis. 2d 225, 252 N.W.2d 664 (1977),] as being limited to sworn testimony. The holding of the court, considered in its entirety, is broad enough to cover unsworn answers of a probationer given in response to questions of a probation agent prompted by pending charges or accusations of particular criminal activity."

prompted by pending charges or accusations of par-
ticular criminal activity, *or any evidence derived from
such testimony,* is inadmissible against the proba-
tioner . . . during subsequent proceedings on related
criminal charges . . . .

*Id.* at 235 (emphasis and footnote added); *see also
Spaeth,* 343 Wis. 2d 220, ¶ 36 (quoting the Supreme
Court's holding in *Kastigar v. United States,* 406 U.S.
441, 453 (1972), that "a grant of immunity must afford
protection commensurate with that afforded by the
privilege . . . . Immunity from the use of compelled
testimony, as well as evidence derived directly or
indirectly therefrom, affords this protection.").

█

¶ 10. The question before us in this case then is
whether Douglas's agent gave Douglas "sufficient
explanation . . . with regard to the type of immunity"
—use and derivative use—to which Douglas was
entitled based upon *Evans.* If his agent gave him
"sufficient explanation . . . then [Douglas's] refusal to
cooperate would be grounds for revocation." *See Ev-
ans,* 77 Wis. 2d at 236. If not, his revocation must be
reversed.

¶ 11. With "use immunity," particular informa-
tion provided by an individual cannot be used against
that individual in criminal proceedings, whereas with
"derivative use immunity," any evidence subsequently
discovered by authorities through direct or indirect
utilization of the provided information can not be used
against the individual in criminal proceedings. *See
New Jersey v. Portash,* 440 U.S. 450, 457–58 (1979);
*Kastigar,* 406 U.S. at 453. Another type of immunity,
"transactional immunity," which is not at issue in this

appeal, "accords full immunity from prosecution for the *offense* to which the compelled testimony relates." *Kastigar*, 406 U.S. at 453 (emphasis added).

¶ 12. Douglas argues that the standard language on the DOC form used in this case, and the additional comments the agent testified that she stated to Douglas, only informed Douglas that he was afforded "use immunity" and did not inform him he was also afforded "derivative use immunity." We agree.

¶ 13. The State asserts, "No case holds that a probation officer must explain the details of derivative-use immunity to a probationer before questioning." The issue on appeal, however, is not whether the agent explained *details* of derivative use immunity to Douglas, but whether she explained *at all* that Douglas was afforded use *and* derivative use immunity, which provided Douglas with significantly broader protection than use immunity alone.[2]

¶ 14. It is undisputed that the agent read the following to Douglas from the top of the DOC statement form:

> I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.

There is also no challenge to the ALJ's finding that

---

[2] For example, we do not suggest that the agent would need to explain to a probationer details such as the rule that with derivative use immunity the burden in any subsequent prosecution would be upon the government to affirmatively demonstrate that evidence it proposes to use "is derived from a legitimate source wholly independent of the compelled testimony." *See Kastigar v. United States*, 406 U.S. 441, 460 (1972).

Douglas's agent further communicated to Douglas that "nothing he told her could be used against him in criminal court."

¶ 15. As identified above, there is a significant difference between having only use immunity and having both use and derivative use immunity—just as there is a significant difference between those types of immunity and transactional immunity—and we do not see how the language the agent read to Douglas and/or her additional commentary provided Douglas with "sufficient explanation" that he was afforded not only use immunity but also derivative use immunity. In the context in which they are used, the words "this information" on the DOC form would be understood by a reasonable probationer as referring to the particular information the probationer would be directly providing the agent, either in writing on the DOC form or verbally at the time of the interview. The full sentence "I have also been advised that none of this information can be used against me in criminal proceedings" would tell a probationer that none of the particular information he/she was providing the agent at that time could be used against the probationer in criminal court, but it would not clearly inform a probationer that *other* information *derived* from the information directly provided by the probationer also could not be used against him/her in criminal court. And the agent's further explanation to Douglas that information he provided her could not be used in criminal *court* would only have further indicated to a probationer such as Douglas that he was protected against the use in criminal court of the particular information he would then provide, but would not have indicated that he was also protected from the use of that information for follow-up investi-

507

gation, such as by law enforcement, to seek out other evidence which could be used against Douglas in court.[3]

¶ 16. The State failed to provide Douglas with a "sufficient explanation . . . with regard to the type of immunity"—use and derivative use—afforded him by the Fifth Amendment and *Evans*.[4] As a result, consistent with *Evans*, Douglas's refusal to cooperate could not serve as a ground for revocation of his probation. Because that was the sole ground determined by the ALJ to support Douglas's probation revocation, we reverse and remand for further proceedings consistent with this opinion.[5]

---

[3] The State cites to *State v. Brimer*, 2010 WI App 57, 324 Wis. 2d 408, 781 N.W.2d 726, for its contention that we have "already decided [in *Brimer*] that the DOC form provides the immunity required by the Fifth Amendment." The State's reliance on *Brimer* is misplaced. In *Brimer*, the "only issue on appeal [was] whether using Brimer's statement [on a standard DOC form containing the same immunity language as the form at issue in this case] at his reconfinement hearing violated his Fifth Amendment right against self-incrimination" in light of the nature of the hearing. *Brimer*, 324 Wis. 2d 408, ¶ 5. We concluded it did not because a reconfinement hearing is not a criminal proceeding. *Id.*, ¶¶ 12–13. We simply did not address in *Brimer* the issue Douglas raises in this appeal.

[4] We agree with Douglas's observation in his reply brief that the DOC form would sufficiently explain the type of immunity provided to the probationer if the sentence at issue read: "I have also been advised that none of this information, or any evidence derived therefrom, can be used against me in criminal proceedings." Of course, related communications from an agent to a probationer should be consistent with this language as well.

[5] Douglas also complains he was not informed "that the immunity to which he is entitled under the Fifth Amendment applied across jurisdictional lines." Douglas fails to sufficiently develop this argument or cite case law in support of it;

*By the Court.*—Order reversed and cause remanded with directions.

therefore, we do not address it. *See ABKA Ltd. P'ship v. Board of Review*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments); *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 634, 460 N.W.2d 787 (Ct. App. 1990) (we do not consider arguments unsupported by legal authority).