STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey Allen THOMPSON, Defendant-Appellant.†

Court of Appeals

*No. 87–0019–CR. Submitted on briefs October 6, 1987.—
Decided December 30, 1987.*

(Also reported in 419 N.W.2d 564.)

† Petition to review denied.

823

For the defendant-appellant the cause was submitted on the briefs of *Gretchen T. Vetzner,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *William L. Gansner,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J. Jeffrey Thompson appeals from a judgment convicting him of armed robbery, contrary to sec. 943.32(2), Stats., and first-degree murder, contrary to sec. 940.01(1), Stats. At trial, he admitted the armed robbery. We conclude that the out-of-court hearsay statements of his accomplices were admissible at his preliminary examination and that his bindover was legally sufficient. We therefore affirm his conviction for armed robbery. Because we conclude that the state's use of Thompson's in-custody response to a probation officer's question to impeach him violated his fifth and fourteenth amendment rights and that such error requires reversal, we reverse his first-degree murder conviction. Because Thompson may be retried, we consider other alleged errors which may affect his trial.

## I.

## BACKGROUND OF THE CASE

On January 23, 1986, during an armed robbery Thompson shot and killed the clerk of the Highway 51 Liquor Store in Janesville. There were no witnesses to

the shooting. Thompson was accompanied by an accomplice who waited in a car in an adjacent parking area.

Thompson admitted the shooting but claimed that it was an accident. The shotgun used by Thompson was loaned to him by another accomplice. Thompson testified that he was unfamiliar with guns and that the gun went off accidentally when he turned to observe a car which drove into the parking lot and shined its lights into the store. The clerk died almost immediately, after receiving a single wound to the chest from a shotgun fired from a distance of one to four feet.

Pursuant to plea bargains, the accomplices pled guilty to second-degree murder and testified at Thompson's trial on behalf of the state. They did not testify at Thompson's preliminary examination but police officers testified as to their in-custody statements to the police.

## II.

## PROSECUTION'S USE OF PROBATION INTERVIEW

While in custody, Thompson, on the advice of counsel, refused to answer the questions of his supervising probation agent and the supervisor of the probation and parole department as to his whereabouts and activities on the day of the robbery and shooting. Shortly after Thompson's arrest, the prosecutor told the supervisor that "it would be nice" if Thompson gave the department a statement concerning his involvement in the robbery and murder. Subsequently a probation agent, Elaine Stipetich, served Thompson with notice of a revocation of

probation hearing and interviewed him while he was still in custody.[1] She did not give him his *Miranda*[2] warnings prior to the interview. She did not make a verbatim record of the interview but, at the direction of her supervisor, dictated a summary, which was placed in Thompson's file.

Over Thompson's objection, the prosecution on cross-examination used the summary of the interview to ask Thompson whether he had told Stipetich that "it" happened because of the excitement and challenge of "it." Thompson admitted that he had.[3]

---

[1]Because we conclude that Thompson's answers to Stipetich were inadmissible in these proceedings for any purpose, we do not reach the question of whether the probation department was the agent of the prosecutor and Stipetich's summary should have been disclosed to the defense pursuant to its discovery demand.

[2]*Miranda v. Arizona,* 384 U.S. 436 (1966).

[3]The exact exchange was as follows:

THE COURT: Just a minute. Just a minute. I want Mr. White's original question read back to him.

"Question: Mr. Thompson, did you tell or indicate to Elaine Stipetich that it wasn't because of the drugs, it wasn't because of the money, but that it happened because of the excitement and challenge of it?"

THE COURT: Then I want an answer to that question.

MR. ROBERTS: I also object to that, your honor.

THE COURT: I want the answer he gave to the question, counsel.

"Answer: Okay, first off, let me address that question. I think the document by which you're basing that question on you're leaving out some very key words, and which I said I did not participate or plan the robbery which would indicate at that time I was denying all involvement in the armed robbery and the homicide of Steven Raby. I may have said something to the effect that—that—you know, that I was looking for excitement in my life. It wasn't to—in regard to the armed robbery so to speak, no."

MR. ROBERTS: I do object to that with all due respect.

Thompson contends that because of the probationer-probation agent relationship which existed at the time, his answers to Stipetich's questions were coerced and that introduction in evidence of any such answer is "reversible error *per se.*" At trial, the state conceded that under *State v. Evans,* 77 Wis. 2d 225, 252 N.W.2d 664 (1977), because Thompson was a probationer, his answers to Stipetich were inadmissible in its case-in-chief but contended they were admissible for impeachment purposes. On appeal, the state argues that Thompson's responses to Stipetich's questions were admissible for any evidentiary purpose.[4] It contends that the validity of *Evans, supra,* is "highly questionable" in view of *Minnesota v. Murphy,* at 465 U.S. 420 (1984). In *Murphy,* at 429, relevant admissions by a probationer volunteered during a routine interview with a probation officer were held admissible in the subsequent criminal prosecution of the probationer. *Murphy* does not affect the application of *Evans* to this

---

THE COURT: Just a minute. Now, I believe that answer to that question is subject to a yes or no answer. It's certainly subject to being clarified if it needs clarification. Mr. Thompson, that question can be answered with yes or no, and can you answer it yes or no?

THE WITNESS: Yes.

THE COURT: All right, what is your answer?

THE WITNESS: Yes.

THE COURT: All right.

[4]This is contrary to the state's position on Evans' motion for rehearing in *Evans.* Then, the state agreed with Evans that the compelled or coerced statement of a probationer which incriminated the probationer was inadmissible for any purpose in subsequent criminal proceedings based on the activities which were the subject of the statement. 3280 *Appendices and Briefs, State v. Evans,* 77 Wis. 2d 225, Respondent's Brief In Opposition to Appellant's Motion for Rehearing (Wis. State Law Library).

case because Minnesota authorities did not take "the extra, impermissible step" which was taken in this case: the state "required [Thompson] to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent."[5] *Murphy* at 436.

It is not disputed that the price of Thompson's silence was revocation of his probation. The trial court stated to Thompson's counsel, without challenge by the state: "[I]f your client refused to discuss this [the events of January 23, 1986] with them that would be grounds for revocation of his probation." The notice which Stipetich served on Thompson initiated proceedings to revoke his revocation because of his previous refusals to answer probation officers' questions as to his whereabouts and activities on January 23, 1986. The supervisor of the Rock county parole and probation department testified in an offer of proof that Thompson's probation was revoked because he failed to account to the department for his whereabouts on January 23, 1986. In *Evans,* 77 Wis. 2d at 228, 252 N.W.2d at 665, the court said: "We reaffirm past decisions holding that a probationer's refusal to account for his whereabouts and activities is a serious violation of probation conditions which may merit revocation."

---

[5]Further, Murphy was not under arrest and in custody. "We emphasize that Murphy was not under arrest and that he was free to leave at the end of the meeting. A different question would be presented if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting." *Murphy,* 465 U.S. at 429 n.5. Unlike Murphy, Thompson was questioned about activities which were the subject of pending criminal charges.

*Murphy* explains that there is a difference between the situation in which the probationer is called to discuss generally matters that may affect his probationary status and the case where the questions put to the probationer would incriminate him in a pending or subsequent criminal prosecution.

> A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution.

*Murphy,* 465 U.S. at 435.

██

*Evans* establishes that in Wisconsin a probationer's answers to a probation agent's question prompted by accusations of criminal activity are "compelled." In *Evans,* 77 Wis. 2d at 235–36, 252 N.W.2d at 668–69, the court stated:

> In order to guarantee the fifth amendment rights of a probationer or a parolee and at the same time to preserve the integrity of the probation system, we hold that upon timely objection in criminal proceedings, the testimony[6] of a probationer or a parolee given in response to questions by a probation or parole agent or at a probation or parole revocation hearing, which questions are

---

[6]We do not construe *Evans* as being limited to sworn testimony. The holding of the court, considered in its entirety, is broad enough to cover unsworn answers of a probationer given in response to questions of a probation agent prompted by pending charges or accusations of particular criminal activity.

prompted by pending charges or accusations of particular criminal activity, or any evidence derived from such testimony, is inadmissible against the probationer or parolee during subsequent proceedings on related criminal charges except for purposes of impeachment or rebuttal where his testimony at the criminal proceeding is clearly inconsistent with the statement made previously. In such case the trial court may admit the revocation testimony or its fruits for the purpose of showing the probability that the probationer or parolee has committed perjury. [Footnote added.]

Although *Evans* holds that the compelled "testimony" of a probationer is admissible in subsequent proceedings on related criminal charges for purposes of impeachment or rebuttal, the *Evans* court did not have the benefit of the later decisions of the United States Supreme Court in *Mincey v. Arizona,* 437 U.S. 385 (1978), *New Jersey v. Portash,* 440 U.S. 450 (1979), and *Murphy, supra,* which hold otherwise.

In *New Jersey v. Portash* the defendant testified before a grand jury after the prosecutors agreed not to use his statements or evidence derived from them in subsequent criminal proceedings. He was thereafter indicted for misconduct in office and extortion by a public official. He did not testify in his defense after the trial court ruled that the prosecution could use his immunized grand jury testimony for purposes of impeachment. He was found guilty. On appeal, he contended that the proposed use of his immunized grand jury testimony violated his fifth and fourteenth amendment rights. The Supreme Court agreed.

The Court stated:

> The Fifth and the Fourteenth Amendments provide that no person "shall be *compelled* in any

criminal case to be a witness against himself." As we affirmed last Term, a defendant's compelled statements, as opposed to statements taken in violation of Miranda, may not be put to any testimonial use whatever against him in a criminal trial. "But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law." (Emphasis in original.) Mincey v. Arizona, 437 U.S. 385, 398 . . . .

*Portash,* 440 U.S. at 459.

*Murphy,* 465 U.S. at 435, establishes that if a probationer is required to choose between giving answers which will incriminate him in a pending or subsequent criminal prosecution and losing his conditional liberty as a price for exercising his fifth amendment right to remain silent, the state may not use his answers for any evidentiary purpose in the criminal prosecution. It is not necessary that the probationer exercise his fifth amendment right to remain silent; it is self-executing.

> There is ... a substantial basis in our cases for concluding that if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Id.,* 465 U.S. at 435.[7]

---

[7]Supreme Court cases indicate that a state may validly insist that a probationer answer incriminating questions and hence sensibly administer its probation system, as long as it recognizes

832

We conclude that under the United Stated Supreme Court cases and *Evans,* Thompson's fifth amendment privilege and his fourteenth amendment right to due process prevented the state from making any evidentiary use whatever in these criminal proceedings of his answers to Stipetich's questions.[8] The

that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. *Murphy,* 465 U.S. at 435 n. 7. Nothing in the federal constitution prevents a state from revoking probation for a refusal to answer that violates a condition of probation or from using the probationer's silence as a factor in deciding whether the conditions of probation have been violated. *Id.*

[8] We would reach a contrary result if the inadmissible evidence had been obtained solely in violation of Thompson's *Miranda* warning rights—*Harris v. New York,* 401 U.S. 222 (1971), and *Oregon v. Hass,* 420 U.S. 714 (1975)—or in violation of his fourth amendment rights—*Walder v. United States,* 347 U.S 62 (1954). "In those cases, the ends of the exclusionary rules were thought adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the defendant who testifies was deemed insufficient to permit or require that false testimony go unchallenged, with the resulting impairment of the integrity of the factfinding goals of the criminal trial." *United States v. Havens,* 446 U.S. 620, 627 (1980). In the case of the fifth amendment, however, it is the constitutional right itself, not simply policy concerns, that requires exclusion of compelled testimony. Note, *The Impeachment Exception to the Sixth Amendment Exclusionary Rule,* 87 Colum. L. Rev. 176, 182 (1987). It is suggested that the impeachment exception may be extended to sixth amendment intrusions into the attorney-client relationship where the government can show "an objectively reasonable motivation for intrusion unrelated to the pending criminal indictment." *Id.* at 195–96.

trial court erred in permitting the state to impeach Thompson with his responses to Stipetich's questions in his probation interview.

## III.

## USE OF PROBATION INTERVIEW: HARMLESS ERROR

At trial, the state argued strenuously that Thompson's admission to Stipetich that "it" happened because of the excitement and challenge of "it" was relevant to the issue of his intent to shoot the store clerk. The prosecutor argued: "[H]e claims that he wants excitement in his life; that he becomes bored, so he attempts new things to see if he can get away with them for the excitement and challenge of it. That provides, in the state's mind, the motivation and reason for the armed robbery and the killing."

On appeal, the state does a volte-face and now argues that the "it" referred to in the prosecutor's allegedly tainted question was the robbery, not the shooting, and therefore Thompson's answer did not bear at all on the "sole disputed issue in the case"— whether Thompson intended to shoot and kill the store clerk. The jury was entitled to infer from Thompson's admission that "it" happened because of the excitement and challenge of "it," that he was a thrill-seeking killer. The prosecutor expected the jury to draw that inference. We therefore reject the state's

*Havens,* 446 U.S. at 627, extended the impeachment exception, where applicable, to the defendant's answers to questions put to him on cross-examination that are plainly within the scope of defendant's direct examination.

argument that Thompson's answer was irrelevant and thus harmless.

The state further argues that because there is a "strong evidentiary basis" for the jury's verdict, if there was error, it was harmless.[9] In *Lynumn v. Illinois,* 372 U.S. 528, 537 (1963), the Court described a similar argument as "an impermissible doctrine." The Court said:

> As was said in Payne v. Arkansas, [356 U.S. 560, 568 (1958),] "this Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment."

*Id.*

■

In *Mincey v. Arizona,* 437 U.S. at 398, the Court said:

> *[A]ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law "even though there is ample evidence aside from the confession to support the conviction." Jackson v. Denno, [378 U.S. 368,] 376 [(1964)]. If, therefore, Mincey's statements to Detective Hust were not "'the product of a rational intellect and a

---

[9]The state does not cite us to such evidence. Despite the state's failure to cite such evidence, we are required to review the record. *See Rudolph v. State,* 78 Wis. 2d 435, 447, 254 N.W.2d 471, 476 (1977), *cert. denied,* 435 U.S. 944 (1978), We are convinced that the relevant evidence of consequence to the determination of the action, sec. 904.01, Stats., was meagre. It is difficult to see how the tainted evidence could be considered harmless. It was relevant on the issue of Thompson's intent to shoot the store clerk.

free will,'" Townsend v. Sain, 372 U.S. 293, 307 [(1963)], quoting Blackburn v. Alabama, 361 U.S. 199, 208 [(1960)], his conviction cannot stand. [Citations omitted, emphasis in original.]

We conclude that the constitutional error of admitting in evidence, over objection, Thompson's compelled incriminatory statement[10] automatically results in reversal. *See McKinley v. State,* 37 Wis. 2d 26, 40, 154 N.W.2d 344, 351 (1967) (there is no alternative to reversal when an involuntary confession is admitted, over objection, in evidence). *See also State v. Dyess,* 124 Wis. 2d 525, 543 n. 10, 370 N.W.2d 222, 231–32 (1985) ("'[S]ome constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error.'"). (Citation omitted.)

## IV.

### ADMISSION OF ACCOMPLICE'S PRIOR INCONSISTENT STATEMENT

Thompson's driver-accomplice, Terry Moe, testified that when Thompson got back in the car the only thing he said was that he had shot the clerk. The state sought to impeach Moe's testimony with his inconsistent statement of March 14, 1986 to the police that immediately after the shooting, while fleeing the scene, Thompson, in response to Moe's statement, "I hope the guy don't die," replied, "I hope he does." To

---

[10]"No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination." *Miranda,* 384 U.S. at 476.

explain the discrepancy between his testimony and his prior inconsistent statement, Moe explained that the incident did not occur in the car but several hours later at Thompson's home. Thompson did not object to admission of Moe's statement when it was used to impeach Moe. Thompson's only objection came later in the trial in a mistrial motion in with Thompson claimed that the statement which Moe attributed to him was irrelevant and its probative value was outweighed by its prejudicial effect. We conclude that Thompson waived his objection by failing to timely and specifically object. *State v. Wedgeworth,* 100 Wis. 2d 514, 528, 302 N.W.2d 810, 818 (1981). However, because the state may attempt to use Moe's out-of-court statement in similar circumstances if Thompson is retried, we address Thompson's arguments.

■

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Sec. 904.01, Stats. A trial court's determination of relevancy will be upheld unless it constitutes an abuse of discretion. *State v. Pharr,* 115 Wis. 2d 334, 345, 340 N.W.2d 498, 503 (1983).

■

Thompson argues that his alleged statement that he hoped the clerk would die had no proper bearing on his intent at the time of the shooting. Relevancy is determined by the trial judge in view of his or her experience, judgment and knowledge of human motivation and conduct. *Pharr,* 115 Wis. 2d at 344, 340 N.W.2d at 502. The trial court was on the scene and was better able than are we to judge whether in the context of the entire case, Moe's prior inconsistent

statement had a tendency to establish Thompson's intent at the time of the shooting. In the context of this trial, we conclude that the trial court did not abuse it discretion in determining that Thompson's statement to Moe was relevant.

■

Thompson argues that Moe's statement should have been excluded because it was unreliable. Moe's trial testimony conflicted with his March 14 statement to the police, which conflicted with earlier statements. Thompson's objection goes to the weight of Moe's testimony, not its admissibility. It was for the jury to choose between Moe's witness-stand testimony and his earlier inconsistent statement. *Ianni v. Grain Dealers Mut. Ins. Co.,* 42 Wis. 2d 354, 361, 166 N.W.2d 148, 151 (1969).

Finally, Thompson argues that Moe's testimony as to his statement should have been excluded because its probative value was outweighed by its prejudicial effect. Sec. 904.03, Stats.

> Evidence is unfairly prejudicial if it has "a tendency to influence the outcome by improper means" or if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish" or otherwise causes a jury "to base its decision on something other than the established propositions in the case."

*State v. Gulrud,* 140 Wis. 2d 721, 736, 412 N.W.2d 139, 145 (Ct. App. 1987), quoting *Lease America Corp. v. Ins. Co. of N. America,* 88 Wis. 2d 395, 401, 276 N.W.2d 767, 770 (1979).

■

Thompson's statement that he hoped the clerk would die, if the jury believed he made the statement,

would arouse the jury's sense of horror. The statement indicates a callous disregard for the life of another. However, the trial court determined that the probative value of the statement on the issue of Thompson's intent to kill was not substantially outweighed by the danger of unfair prejudice. We conclude that in the context of this trial, the trial court did not abuse its discretion in admitting the statement. It was one of the few pieces of evidence which bore on the determinative issue in the case—Thompson's intent to shoot the store clerk.

## V.

## PROBABLE CAUSE FOR BINDOVER

Thompson contends that without the inadmissible hearsay statements of his accomplices, there was no probable cause to bind him over for trial on either of the charges. The purpose of a preliminary examination is to determine whether probable cause exists to believe that a felony has been committed by the defendant. *State ex rel. Funmaker v. Klamm,* 106 Wis. 2d 624, 628, 317 N.W.2d 458, 460 (1982). Probable cause to bind over a defendant for trial exists when the trier of fact has before it a believable account of the defendant's commission of a felony. *State v. Dunn,* 121 Wis. 2d 389, 398, 359 N.W.2d 151, 155 (1984).

Thompson acknowledges that *Mitchell v. State,* 84 Wis. 2d 325, 267 N.W.2d 349 (1978), and *State v. Padilla,* 110 Wis. 2d 414, 329 N.W.2d 263 (Ct. App. 1982), establish that unconfronted hearsay is admissible in a preliminary examination, if the hearsay hurdle is cleared and the statement is admissible

under a hearsay exception. He agrees that his accomplices' statements were admissible as statements against interest. He contends, however, that they were inadmissible because they lacked "sufficient guarantees of trustworthiness." Thompson relies on *Lee v. Illinois,* 476 U.S. 530, 539(1986), which found that the hearsay confession of an accomplice was "presumptively unrealiable" and, in that case, did not bear sufficient independent "indicia of reliability" to overcome that presumption. *Lee,* however, involved the use at trial of a hearsay confession of an accomplice, contrary to Lee's confrontation rights. At preliminary examination, there is no constitutional or statutory right to confront the hearsay declarant. *Padilla ,* 110 Wis. 2d at 422, 426, 329 N.W.2d at 268, 270.

Thompson does not dispute that if his accomplice's statements were properly admitted at his preliminary examination, there was sufficient evidence to bind him over for trial. We conclude the statements were properly admitted.

## VI.

## DISPLAY TO JURY AND ADMISSION TO JURY ROOM OF PHOTOGRAPHS AND DIAGRAM

Thompson contends that the trial court abused its discretion in allowing photographs of the victim's body and a diagram of the interior of the store to be displayed to the jury and admitted to the jury room. He contends that the photographs and diagram added nothing to the testimony of the witnesses and prejudiced and inflamed the jury.

Whether photographs are displayed to the jury is discretionary with the trial judge. *Hayzes v. State,* 64 Wis. 2d 189, 198, 218 N.W.2d 717, 722 (1974). Whether photographs are sent to the jury room is also discretionary with the trial court. *State v. Armstrong,* 110 Wis. 2d 555, 579, 329 N.W.2d 386, 398, *cert. denied,* 461 U.S. 946 (1983). We will uphold the trial court's discretion unless it is wholly unreasonable or the only purpose of the photographs is to inflame and prejudice the jury. *Id.*

The diagram is subject to the same rule. It shows a stick-man representation of the victim's body lying in a red-ink pool of blood with splatters of red-ink blood trailing from the body to the vicinity of the cash register.

The trial court allowed the photographs and the diagram to be displayed to the jury and admitted to the jury room to assist the jury in understanding the testimony. Thompson argues that the sole issue before the jury was whether Thompson intended to shoot the store clerk. He contends that there was no need for the demonstrative evidence except as it bore on that question. His argument is weakened considerably by the fact that he allowed without objection volumes of testimony which bore on where the victim was standing when he was shot, where the body was found, in what part of the body he was shot, the path of the shotgun wad through the victim's body, the organs affected, the trail of blood, and other testimony having little, if any, relevance on the determinative issue in the case. In the circumstances, the trial court did not abuse its discretion in allowing the photographs and the diagram to be displayed to the jury and admitted

to the jury room to assist the jury in understanding the testimony.

If Thompson is retried, the evidence may develop in such a way that the display of the photographs and diagram to the jury and their admission to the jury room may become wholly unreasonable and may serve only to inflame and prejudice the jury. The prosecutor will have to weigh whether the risk of reversal justifies seeking to display to the jury and admit to the jury room the photographs and diagram. The trial court may have to weigh the probative value of such use of this evidence against its prejudicial effect.

## VII.

## NEGATIVE TRIAL INCIDENTS

The issues were hotly contested. The trial was punctuated by numerous objections and motions for mistrial. Thompson claims that he was denied a fair trial by a number of negative trial incidents whose individual and cumulative effect was prejudicial to him. We do not reach his claim because the incidents are peculiar to the completed trial and do not involve alleged errors of law on which our advice could be of assistance to counsel or the court.

*By the Court.*—Judgment affirmed in part; reversed in part.