STATE of Wisconsin, Plaintiff-Respondent,

v.

Curtiss L. CHILDS, Defendant-Appellant.†

Court of Appeals

*No. 87–0267–CR. Submitted on briefs September 14, 1987.—
Decided July 28, 1988.*

(Also reported in 430 N.W.2d 353.)

† Petition to review denied.

116

For the defendant-appellant the cause was submitted on the briefs of *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J.  Curtiss Childs appeals a judgment convicting him of second-degree sexual assault (fellatio), contrary to sec. 940.225(2)(a), Stats.[1] He claims that several trial errors entitle him to a new trial. First, the trial court erred in instructing the jury that oral stimulation of the penis is fellatio. Second, the trial court erred in denying his motion for a mistrial or, in the alternative, for a cautionary instruction because of the prejudicial effect of evidence of the complainant's prior sexual conduct. Third, the trial court erred in allowing his parole agent to testify in rebuttal as to statements made by Childs to the agent in a pre-revocation interview. Finally, Childs contends that he should be granted a new trial in the interest of justice because it is probable a retrial would produce a different result. We conclude that there were errors in

---

[1]Section 940.225(2), Stats., provides:

Whoever does any of the following is guilty of a Class C felony:

(a)  Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

118

Childs's trial but that they were harmless. We therefore affirm the judgment.

## I.

## BACKGROUND OF THE CASE

Childs and the complainant met in a Madison bar where they drank, danced and talked. After the bar closed, they went to Child's apartment where they proceeded from talking to kissing to hug-dancing, fondling and sexual intercourse. The complainant claimed that she did not consent to the intercourse. The jury was unable to reach a verdict on a vulvar sexual intercourse charge, and, on the state's motion, the trial court dismissed the charge. The jury found Childs guilty of sexual intercourse, fellatio, by the use or threat of force or violence.

## II.

## FELLATIO INSTRUCTION

Childs claims that the trial court erred in instructing the jury that fellatio is the oral stimulation of the penis.

Section 940.225(5)(b), Stats., defines sexual intercourse as follows:

> "Sexual intercourse" includes the meaning assigned under s. 939.22(36)[2] as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon

[2]Section 939.22(36), Stats., reads: "'Sexual intercourse' requires only vulvar penetration and does not require emission."

the defendant's instruction. The emission of semen is not required.

Childs argues that the instruction relieved the state of its burden of proving beyond a reasonable doubt an essential element of the offense—intrusion of his penis into the complainant's mouth. He contends that failure to instruct the jury on the essential elements of an offense is "plain constitutional error requiring reversal." We conclude that the jury was properly instructed as to the law.

Note 1 to Wis. J I—Criminal 1200 advises:

> If fellatio or cunnilingus is alleged to have occurred, the following should be used to simply tell the jury that for the purposes of the Sexual Assault Law, these acts *are* sexual intercourse:
> "Cunnilingus, the oral stimulation of the clitoris or vulva, is sexual intercourse."
> "Fellatio, the oral stimulation of the penis, is sexual intercourse."
> (Both definitions are from *Webster's New Collegiate Dictionary.*) (Emphasis in original.)

■■■

In the absence of a statutory definition, the common and generally understood meaning of a word should be applied in the construction of a statute. *Wood County v. Bd. of Vocational, T & A Ed.,* 60 Wis. 2d 606, 614, 211 N.W.2d 617, 620 (1973). The ordinary and common meaning of a word may be established by the definition in a recognized dictionary. *Id.* The ordinary and common meaning of fellatio includes oral stimulation of the penis without penetration into the mouth. Therefore, the jury was properly instructed as to the meaning of fellatio.

## III.

## EVIDENCE OF PRIOR SEXUAL CONDUCT

Section 972.11(2)(b), Stats.,[3] makes inadmissible in any prosecution under sec. 940.225, Stats., any evidence of the complainant's prior sexual conduct except evidence as to conduct with the defendant, subject to exceptions which are not applicable here. Sexual conduct includes the complainant's "lifestyle." Sec. 972.11(2)(a).

In the prosecutor's examination of the complainant, the following questions were asked and the following answers were given:

Q. ... Why did you go with a strange man to his apartment that night?

A. ... [O]ver the whole course of the evening he got me talking to him and I thought he was nice and we were getting along and I wanted to continue talking to him. And there were a number of factors and I may have had a little too much to drink. Also I didn't want to go back to my apartment and bother my roommates with noise with my music and I wanted to listen to music.

Q. I assume you've had a lot of time to rethink that decision.

---

[3]Section 972.11(2)(b), Stats., provides in part:

If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury . . . .

A. Right. It's also something that I had never done before.

Q. It's not something that you'd done before?

A. No.

Childs did not object to this testimony until the next morning when he moved for a mistrial or, in the alternative, for a curative instruction. We need not decide the state's claim that Childs waived the error because we conclude it was harmless.

The introduction of the evidence was error. The complainant's testimony signalled to the jury that she regarded the practice of going from a bar to a strange man's apartment as morally improper and not part of her lifestyle. Her testimony tended to make her story more credible. The evidence was inadmissible under sec. 972.11(2)(b), Stats. *See State v. Gavigan,* 111 Wis. 2d 150, 159, 330 N.W.2d 571, 576 (1983) (prior sexual conduct includes lack of sexual activity). *See also State v. Mitchell,* 144 Wis. 2d 596, 424 N.W.2d 698 (1988) (testimony that victim had been virgin inadmissible).

■

However, in view of the rest of the complainant's testimony, the jury's assessment of her credibility could not have been affected by her gratuitous response. The complainant testified that at Child's apartment there "was a slow progression from kissing, slow dancing to a little more fondling, to sitting down and eventually, ... after a number of minutes ... it slowly progressed to the floor" where "[w]e were continuing to make out." She let Childs remove her blouse, shirt, bra and pants. The complainant does not claim that, up to the time Childs forced her to have vaginal intercourse and fellatio, she did not consent to their love-making. In view of her testimony, we

conclude that there is no reasonable possibility that her testimony as to her life-style contributed to Childs's conviction. *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985) (state's burden is to establish that there is no reasonable possibility that error contributed to conviction).

## IV.

### TESTIMONY OF PAROLE AGENT

The state concedes that Childs's out-of-court statements to his parole agent were not clearly inconsistent with his trial testimony. Under the test which the state applies, *State v. Evans,* 77 Wis. 2d 225, 235–36, 252 N.W.2d 664, 668–669 (1977), the rebuttal testimony of the parole agent was not admissible because it did not impeach Childs's testimony. Under *State v. Thompson,* 142 Wis. 2d 821, 826–34, 419 N.W.2d 564, 565–568 (Ct. App. 1987), because Childs's statement to his parole agent was coerced, it was not admissible for any evidentiary purpose. For a discussion of the fifth amendment exclusionary rule, see Note, *The Impeachment Exception to the Sixth Amendment Exclusionary Rule,* 87 Colum. L. Rev. 176, 182 (1987).

■

On voir dire, the agent testified that he obtained Childs's statement in a pre-revocation interview. He stated to Childs that he expected Childs's answers to be honestly made and truthful "and I will use that statement with other information that I gather to make a decision to which way I shall proceed, meaning that I would proceed with revocation or some other form of action." A statement to a probation or

parole agent in such circumstances is coerced. *Thompson,* 142 Wis. 2d at 832, 419 N.W.2d at 568.[4]

We conclude, however, that admission of the agent's testimony was harmless beyond a reasonable doubt. In *Thompson* we held that the admission in that case of the probationer's coerced statement was not harmless error, in spite of the state's argument that there was a "strong evidentiary basis" for the jury's verdict. 142 Wis. 2d at 834–35, 419 N.W.2d at 569. It is the general rule that "the admission in evidence, over objection, of [a] coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment." *Lynumn v. Illinois,* 372 U.S. 528, 537, (1963) quoting *Payne v. Arkansas,* 356 U.S. 560, 568 (1958). In *Thompson,* we also quoted *Mincey v. Arizona,* 437 U.S. 385, 398 (1978) as follows:

> *[A]ny* criminal trial use against the defendant of his *involuntary* statement is a denial of due process of law "even though there is ample evidence aside from the confession to support the conviction." *Jackson v. Denno,* [378 U.S. 368,] 376 [(1964)].

142 Wis. 2d at 835, 419 N.W.2d at 569 (emphasis in original).

---

[4]We emphasize that our holding is not a modification or extension of *Thompson.* Under the amended rules of probation and parole signed by Childs, his parole status was subject to revocation if he failed to inform his parole agent of his whereabouts and activities when directed to do so by the agent. Childs was thus required to choose between giving answers to his parole agent which could incriminate him in a subsequent criminal prosecution and losing his conditional liberty as a price for exercising his fifth amendment right to remain silent.

However, the general rule against admission of an involuntary statement or coerced confession is not a per se rule. *See Harrison v. Owen,* 682 F.2d 138, 140 (7th Cir. 1982) (there is no blanket prohibition against a harmless error finding in the context of inadmissible confession). In *Milton v. Wainwright,* 407 U.S. 371 (1972), the Court held that admission of incriminating statements made to a "Judas" cellmate was harmless beyond a reasonable doubt because the jury, in addition to hearing this evidence, heard overwhelming evidence of Milton's guilt, including no less than three voluntary full confessions made by Milton prior to his indictment.

*Milton v. Wainwright* is an exception to the general rule. The Supreme Court has reversed convictions predicated on involuntary confessions as a matter of law on at least thirty-one occasions. *See Miller v. Fenton,* 741 F.2d 1456, 1470 n. 3 (3rd Cir. 1984) (Gibbons, J. dissenting), *rev'd,* 474 U.S. 104 (1985), *on remand, cert. denied,* 479 U.S. 989 (1986).

Several federal circuit courts of appeals have applied a harmless error test in cases in which an improperly obtained confession was admitted into evidence. In *United States ex rel. Moore v. Follette,* 425 F.2d 925 (2d Cir. 1970), cert. denied, 398 U.S. 966 (1970), the court held that the admission of an improperly obtained confession was harmless error where there was a properly obtained confession. However, the court stated that "[t]he case where admission of an improperly obtained confession can be considered harmless error is exceedingly rare...." 425 F.2d at 928.

In *Harrison v. Owen,* the court held that any error arising out of the admission of police officers' testimo-

ny regarding petitioner's oral incriminating statements was harmless beyond a reasonable doubt. The admissible testimony of petitioner's neighbor concerning petitioner's incriminating statements was of an extremely high quality and probative value. There was no challenge to the truthfulness of the neighbor's testimony, and the evidence against the petitioner as a whole, disregarding his statements to the police officers, established guilt beyond a reasonable doubt. The court said:

> Instead of allowing the jury to hear the story only once rather than twice, exclusion of the police officer's testimony would have little consequence to the final outcome. A different conclusion might be reached if [the neighbors'] testimony were challenged as untrue. Under that circumstance, the police officer's testimony would take on substantial importance. (Citation omitted.)

682 F.2d at 141.

██

The distinction which appears thus far is that if the involuntary or coerced confession or statement has no evidentiary value, and is merely cumulative of voluntary statements of the defendant, its admission constitutes harmless error. We conclude that the distinction is valid.

In *Chapman v. California,* 386 U.S. 18, 22, *reh'g denied,* 386 U.S. 987 (1967), the Court announced "that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction."

Justice Stewart, concurring in the result, pointed out that when involuntary confessions had been introduced at trial, the Court had "always reversed convictions regardless of other evidence of guilt. ... Even when the confession is completely 'unnecessary' to the conviction, the defendant is entitled to 'a new trial free of constitutional infirmity.'" *Chapman,* 386 U.S. at 42 (quoting *Haynes v. Washington,* 373 U.S. 503, 518–19 (1963)). The majority acknowledged that "our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." One of the constitutional infractions cited by the court as an example was a coerced confession, *Payne v. Arkansas. Chapman,* 386 U.S. at 23 n. 8. The Wisconsin Supreme Court has likewise noted that there are constitutional errors, including admission of a coerced confession, which automatically result in reversal. *Dyess,* 124 Wis. 2d at 543, n. 10, 370 N.W.2d at 231–232.

In a recent case, *Satterwhite v. Texas,* 100 L. Ed. 2d 284 (1988), the United States Supreme Court reaffirmed its statement in *Chapman* that there are some constitutional rights the infraction of which can never be harmless error. *Id.,* 100 L. Ed. 2d at 293. *Satterwhite* involved the admission of psychiatric testimony in violation of the defendant's sixth amendment right set out in *Estelle v. Smith,* 451 U.S. 454 (1981). Satterwhite urged the Court to adopt an automatic rule of reversal for such violations. The Court declined to do so, noting that it had applied an automatic reversal rule to sixth amendment violations only when "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Satterwhite,* 100 L. Ed. at 294. The

Court stated that it had permitted harmless error analysis where the evil caused by a sixth amendment violation is limited to the erroneous admission of particular evidence at trial, citing *Milton v. Wainwright. Id.*

The evidence admitted in *Milton v. Wainwright* was a coerced confession obtained in violation of Milton's fifth amendment right against self-incrimination as well as his sixth amendment right to counsel. The Court relied on *Chapman* in holding that the admission of the confession was harmless error. The *Satterwhite* Court likewise relied on the *Chapman* harmless-error rule. Applying the *Chapman* rule to this case, we conclude that the error in admitting the testimony of Child's parole agent was so "unimportant and insignificant" that it was harmless. Childs's statement to his parole agent was merely cumulative of his in-court testimony, did not incriminate him, and added nothing to the state's case.

Childs argues, however, that the parole agent's testimony prejudiced him because it revealed to the jury that he was a parolee and suggested by "innuendo" that he was not a credible witness. It is disingenuous of Childs to suggest that the jury was not already aware that the state did not regard him as a credible witness. In fact, the state's strategy may have backfired since the parole agent confirmed that Childs's testimony was completely consistent with what he had previously told his parole agent after he had been admonished that he should be truthful.

Further, the jury could have been favorably influenced towards Childs by the fact that, despite his record of four criminal convictions, he was considered by the state to be sufficiently trustworthy to be placed

under parole supervision rather than imprisoned. We see no prejudice.

## V.

## DISCRETIONARY REVERSAL

Childs argues that we should order a new trial in the interest of justice because of the improper admission of the prior sexual conduct evidence and the parole agent's testimony. He contends that without this evidence, it is probable that a retrial would produce a different result.

In order to exercise our different-result power of discretionary reversal under sec. 752.35, Stats., we must be convinced that Childs should not have been found guilty and that justice demands that he be given a new trial. *State v. Wyss,* 124 Wis. 2d 681, 736, 370 N.W.2d 745, 771 (1985). We are not so convinced.

*By the Court.*—Judgment affirmed.