PATIENCE DRAKE ROGGENSACK, J.
¶ 87. (concurring). Gregory Sahs' incriminating, oral statement to his probation agent, made when he was not in custody, was voluntarily made without the threat that he would he revoked if he did not speak. Accordingly, his statement was not compelled and his Fifth Amendment privilege against self-incrimination for the crime he disclosed was not self-executing. See Minnesota v. Murphy, 465 U.S. 420, 436 (1984).
¶ 88. I write to confirm for the reader that the majority opinion does not rest on the Wisconsin Constitution, but rather, that the majority opinion is based solely on the Fifth Amendment of the United States Constitution, which is the only constitutional provision that the parties argued before us.[1] I also write to draw together foundational principles that control when the Fifth Amendment privilege against self-incrimination becomes self-executing for probationers and to draw attention to unduly broad statements in some opinions that could cause confusion if the statements were applied without a thorough consideration of all underlying legal principles. Because my analysis differs from the majority opinion's analysis but also results in the *668 conclusion that Sahs1 oral statement was not compelled, I do not join the majority opinion, but respectfully concur.
I. BACKGROUND
¶ 89. In 2007, Sahs was convicted of possession of child pornography, contrary to Wis. Stat. § 948.12(lm). This was Sahs' second conviction for possession of child pornography, the first one occurring in 2005. When the incriminating statements giving rise to the second conviction were made, Sahs was on probation for the 2005 conviction. He made the incriminating statements to his probation agent, Michael Krause.
¶ 90. Prior to making incriminating statements, Sahs called Krause and asked to come in and "talk about some things." Sahs set up an appointment to meet with Krause on a mutually convenient date, January 12, 2007.
¶ 91. When Sahs appeared for his appointment, he told Krause that he had accessed child pornography through a computer he kept at a friend's house. Sahs does not allege that he made this oral statement in response to a question from Krause about either a pending charge or particular criminal activities, nor does he allege that Krause, or the conditions of his probation, threatened revocation of probation if Sahs refused to answer such questions. After Sahs orally incriminated himself of violating Wis. Stat. § 948.12(lm), Krause asked Sahs to provide a written statement on a standard Department of Corrections (DOC) form. Sahs did so; however, the DOC form is not in the record.[2]
*669 ¶ 92. At the time of Sahs' incriminating oral statement to Krause, he alleged he was scheduled to take a polygraph test within a few days as part of his probation requirements for his 2005 conviction. Sahs alleges that this upcoming obligation generated his need to speak with Krause.
¶ 93. After Sahs made his oral and written incriminating statements, Krause initiated revocation proceedings. Krause also notified the West Allis Police Department, who took Sahs into custody. Detective Chevremont gave Sahs Miranda[3] warnings. Sahs said that he understood the warnings and was willing to speak with the detective. Sahs then admitted that while he was on probation, he downloaded child pornography on the computer he kept at his friend's house. Based on his admissions, Sahs was charged with possessing child pornography, in violation of Wis. Stat. § 948.12(lm).
¶ 94. As the matter proceeded before the circuit court, Sahs moved to suppress both the oral and written statements he made to Krause and his statements to Chevremont. The circuit court found that Sahs initiated the January 12, 2007 meeting with Krause, and that he volunteered that he had downloaded child pornography onto a computer he kept at a friend's home. The circuit court concluded that no Fifth Amendment violation occurred and denied Sahs' motion to suppress.
¶ 95. On appeal, as well as on this review, Sahs contends that his statements to Krause were compelled by the rules of probation to which he was subject because he was required to appear and give truthful answers to *670 questions; and therefore, his Fifth Amendment privilege against self-incrimination was self-executing, requiring suppression of his incriminating statements. He also contends that the DOC form on which he provided a written admission of violating Wis. Stat. § 948.12(lm) notified him that his statement thereon would not be used in a subsequent criminal proceeding, thereby providing another ground upon which to suppress his incriminating statements. However, as I noted, that form is not in the record before us.
II. DISCUSSION
A. Standard of Review
¶ 96. Whether a statement was testimonial, incriminating and compelled, are questions of law for our independent review. Murphy, 465 U.S. at 426. Whether testimony was voluntary, thereby waiving the defendant's privilege against self-incrimination, involves the application of constitutional principles to the facts found by the circuit court. This also presents a question of law for our independent review. State v. Ward, 2009 WI 60, ¶ 17, 318 Wis. 2d 301, 767 N.W.2d 236. And finally, we uphold the factual findings of the circuit court unless they are clearly erroneous. State v. Novy, 2013 WI 23, ¶ 22, 346 Wis. 2d 289, 827 N.W.2d 610.
B. General Fifth Amendment Principles[4]
¶ 97. The privilege, or right, to remain silent afforded by the Fifth Amendment comes into play when a defendant is compelled to give testimony that is incrimi *671 nating. Murphy, 465 U.S. at 426. A defendant does not lose the Fifth Amendment privilege against self-incrimination when he is convicted of a crime. Baxter v. Palmigiano, 425 U.S. 308, 316 (1976).
¶ 98. Cases parsing a defendant's Fifth Amendment privilege against self-incrimination arise in two broad categories. Either the defendant remained silent, thereby maintaining his Fifth Amendment privilege and objected to the sanction imposed for his silence, or the defendant made a statement and then moved to suppress his statement.
1. Defendant is silent
¶ 99. Generally, a witness must remain silent rather than answer questions in order to assert his Fifth Amendment privilege against self-incrimination. Murphy, 465 U.S. at 429. However, a witness may be compelled to testify, notwithstanding the Fifth Amendment privilege, if he is granted use-immunity for his answers to questions that may incriminate him. Kastigar v. United States, 406 U.S. 441, 453 (1972).[5]
¶ 100. Only certain types of questions, for example, those that are related to pending charges or relevant to particular criminal activity, will implicate the Fifth Amendment if the probationer is required to answer rather than to remain silent. State v. Evans, 77 *672 Wis. 2d 225, 227-28, 252 N.W.2d 664 (1977). Stated otherwise, it is those types of questions that generate testimony that are incriminating. Id. Therefore, requiring answers to questions such as whether the probationer has been following the curfew requirements of his probation, generally are not sufficient to draw in the protections of the Fifth Amendment, even though they could lead to revocation of probation. See id. at 230 (explaining that a probationer enjoys a conditional liberty that is made possible by the legislature and the probationer's adhering to the rules of the probation).
¶ 101. A probationer may be forced to relinquish his right to silence and be compelled to answer questions that were "prompted by pending charges or accusations of particular criminal activity" if he is advised that his responses "could not be used against him in a subsequent criminal proceeding arising out of the same fact situation." Id. at 235-236. If the probationer nevertheless refuses to answer and if his probation was revoked because of his silence, no Fifth Amendment violation occurred. Id. at 236 (explaining that a remand was necessary to advise Evans that if he responded to questions that were incriminating, his answers would not be used against him in violation of his Fifth Amendment privilege against self-incrimination).
¶ 102. However, not all penalties levied when a defendant refuses to speak are significant enough to implicate the Fifth Amendment. See McKune v. Lile, 536 U.S. 24, 36 (2002) (explaining that a prison inmate's silence resulting in dismissal from sex-offender treatment program and the subsequent transfer to a less desirable penal institution were not adverse consequences significant enough to affect a defendant's Fifth Amendment privilege).
*673 ¶ 103. State v. Thompson, 142 Wis. 2d 821, 419 N.W.2d 564 (Ct. App. 1987), abrogated on other grounds by Arizona v. Fulminante, 499 U.S. 279 (1991), provides a helpful discussion, but it requires careful reading and an understanding of the cases on which Thompson relies. Thompson, while in custody and without being given Miranda warnings, initially refused to answer questions posed by his probation agent about his whereabouts on the day of a robbery and shooting. Id. at 826. While still in custody and after being served with notice of a revocation hearing, Thompson was again questioned and made incriminating statements. Id. at 826-27. Thompson's answers were later used at trial. Id. at 827.
¶ 104. Although there are some sweeping statements in the Thompson decision that could be read to expand the principles established in Murphy, Thompson's holding is proscribed by three requirements: First, Thompson is based on the Fifth Amendment and therefore, it must follow United States Supreme Court precedent; second, the questions inquired about pending charges or particular criminal activity, id. at 830-31; and third, the questioning occurred while Thompson was in custody and without the benefit of Miranda warnings, id. at 826-27. The failure to give Miranda warnings prior to a custodial interrogation is sufficient, standing alone, to suppress Thompson's incriminating statements as compelled self-incrimination, according to Murphy. See Murphy, 465 U.S. at 429-30.
¶ 105. Our decision in Tate v. Schwarz, 2002 WI 127, 257 Wis. 2d 40, 654 N.W.2d 438, presents another facet of the Fifth Amendment privilege against self-incrimination. "Tate was convicted of repeated sexual assault of a child after a jury trial in which he testified and denied the offense." Id., ¶ 2. The procedural posture *674 of the case was critical to the conclusions we reached. To explain, Tate was placed on probation and ordered to attend a sex-offender treatment program, which required him to admit the sexual assaults at a time when his conviction was up on appeal. Id. He refused, asserting his Fifth Amendment privilege. Id. He was terminated from the program and his probation was revoked. Id.
¶ 106. Tate objected to the termination of probation. He asserted that he had not been offered use-immunity, and he had not been told that statements made in treatment would not be used against him in the event that his appeal resulted in a new trial. Id. ¶ 11. He also was concerned that the requested admission could result in a perjury charge. Id. We agreed that because of the potential for new criminal consequences for the same crime for which he was on probation, Tate's Fifth Amendment privilege had been contravened by the probation revocation that resulted from his silence when use-immunity was not offered. Id., ¶ 4. We crafted a very narrow decision in which we explained that there would be no Fifth Amendment violation in requiring admissions in therapy sessions for the crime of conviction if no threat of new criminal consequences pertained. Id., ¶ 19 n.6 (citing State v. Carrizales, 191 Wis. 2d 85, 92, 528 N.W.2d 29 (Ct. App. 1995)).
2. Defendant speaks
¶ 107. As set out above, it is the general rule that a witness must remain silent rather than answer questions if he chooses to assert his Fifth Amendment privilege against self-incrimination. Murphy, 465 U.S. at 429. However, Murphy established certain situations where the application of this general rule does not pertain, e.g., when the witness is in custody and has not *675 received Miranda warnings. Id.; see also Thompson, 142 Wis. 2d at 827. This exception for custodial questioning from the general rule that the Fifth Amendment privilege must be asserted is driven by the inherently coercive nature of police custody. Murphy, 465 U.S. at 29-30.
¶ 108. It was argued in Murphy that the five factors set out below could result in a custody-like coercive setting for probationers that should result in exceptions from the obligation to remain silent when asserting the Fifth Amendment privilege: (1) that the probation officer "could compel [] attendance and truthful answers;" (2) that "the probation officer consciously sought incriminating evidence;" (3) that probationer "did not expect questions about prior criminal conduct and could not seek counsel before attending the meeting;" (4) that "there were no observers to guard against abuse or trickery;" and (5) "interrogator's insinuations that the interrogation will continue until a confession is obtained." Id. at 431-33. However, the Supreme Court concluded that those factors, either individually or taken all together, are insufficient to excuse the failure to "claim the privilege in a timely manner" by remaining silent. Id. at 431.
¶ 109. An exception to the obligation to remain silent in order to invoke the Fifth Amendment privilege against self-incrimination, in addition to that set out in Murphy, occurs when a probationer is required to appear and respond to questions and the state seeks "to induce the [probationer] to forgo his Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" Id. at 434 (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977)).
*676 ¶ 110. To explain further, Cunningham arose in the context of attempted enforcement of a New York statute that automatically removed political officeholders from office for refusing to sign a document waiving the Fifth Amendment privilege against self-incrimination prior to being questioned before a grand jury. Cunningham, 431 U.S. at 802-03. The Supreme Court concluded that because of the statutory, automatic removal from office that resulted from refusing to waive the Fifth Amendment privilege to remain silent, the questioning involved an unconstitutional threat unless use-immunity was provided in exchange for the waiver prior to questioning. Id. at 809.
¶ 111. When a state's parole revocation statute does not automatically afford revocation, even when the probation agent seeks revocation, the presence of such a statute, without more, is not sufficient to constitute a threat of the type that results in compelled testimony violative of the Fifth Amendment. See Murphy, 465 U.S. at 437 (explaining that "[o]n its face, Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege"). Therefore, in regard to an obligation to appear and to give truthful testimony,[6] the Supreme Court has explained that a probationer is in *677 no different position from that of an ordinary witness subpoenaed to trial or to appear before a grand jury. Id. at 427. He must appear and if he chooses to speak, he must answer truthfully. Id. (noting that "the general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones").
¶ 112. We have recently reaffirmed that generally, the Fifth Amendment privilege against self-incrimination is not self-executing and must be invoked. State v. Mark, 2006 WI 78, ¶ 2,292 Wis. 2d 1, 718 N.W.2d 90. "The answers of [a probationer] to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." Id., ¶ 26. If a probationer speaks, we examine whether the statements were incriminating and compelled because the Fifth Amendment's protection against self-incrimination will not lie unless there is testimony that is incriminating and compelled. Id., ¶ 16 (further citations omitted).
¶ 113. In Mark, use-immunity was granted for prosecution of future crimes so the statements that resulted in revocation were not incriminating, i.e., Mark's statement did not incriminate him in a crime that could be prosecuted. Therefore, the Fifth Amendment did not come into play. In addition, the statements were used in a ch. 980 commitment, which is not a criminal proceeding.
¶ 114. In addition, according to the Supreme Court's decision in Murphy, being revoked for a voluntary statement does not violate the Fifth Amendment right against self-incrimination. Murphy, 465 U.S. at 440. All choices that a defendant makes are not choices that result in compelled, rather than voluntary, testimony.
*678 ¶ 115. An interesting example of such a choice is found in N. Carolina v. Alford, 400 U.S. 25 (1970). There, Alford pled to second-degree murder, rather than standing trial for the charged offense, first-degree murder, in order to avoid the possibility of being subjected to the death penalty if convicted of first-degree murder. Id. at 26-27. The Supreme Court concluded that the availability of such a choice and Alford's plea to second-degree murder did not equate with a compelled plea that would violate the Fifth Amendment. Id. at 39.
¶ 116. A recent court of appeals case, State v. Peebles, 2010 WI App 156, 330 Wis. 2d 243, 792 N.W.2d 212, greatly expanded Fifth Amendment protections for probationers, above the Fifth Amendment protections accorded to one who has never been convicted of a crime. In Peebles, the court concluded that Peebles was compelled[7] to give incriminating statements in the course of sex-offender treatment, even though he did not raise his Fifth Amendment privilege, none of the exceptions to the obligation to assert the privilege set out in Murphy or Cunningham were present and use-immunity was not granted prior to Peebles' statements.[8] Id., ¶¶ 1, 9.
¶ 117. Peebles is wrongly decided because it grants blanket, self-executing use-immunity to probationers simply because they could be revoked if they did not answer an agent's questions, thereby omitting the obligation to raise the Fifth Amendment privilege as Murphy has required. See Murphy, 465 U.S. at 431 *679 (explaining that a probationer's obligation to appear and to answer truthfully does not remove a probationer's obligation to raise his Fifth Amendment privilege). Peebles cites Evans, 77 Wis. 2d at 235-36, for its holding. Peebles, 330 Wis. 2d 243, ¶ 13. However, in so doing, Peebles incorrectly states the legal conclusions of Evans, and it is inconsistent with the Supreme Court's holdings in Murphy.[9]
¶ 118. To explain, Evans arose out of a probationer's silence, not a probationer's statement. Evans, 77 Wis. 2d at 236. In contrast with Evans, Peebles spoke and then sought to suppress his statement. While Evans is based on the Fifth Amendment, it preceded Murphy, which explained Fifth Amendment principles more fully than Evans. Therefore, unless the probationer falls within one of Murphy's or Cunningham's exceptions, a probationer must raise the privilege to remain silent and be given use-immunity before he can be held to have been compelled to speak. Murphy, 465 U.S. at 427;[10] Cunningham, 431 U.S. at 806.[11]
*680 ¶ 119. Peebles' omission of a defendant's requirement to raise the Fifth Amendment privilege before he can speak without fear of prosecution is also inconsistent with our decision in Mark where we said that, "while an individual has a prepetition or prearrest right against self-incrimination, that right is ordinarily not self-executing and must be invoked." Mark, 292 Wis. 2d 1, ¶ 2 (emphasis added). See also, id., ¶ 24 (explaining that "Murphy reaffirms the general rule that the Fifth Amendment privilege must be asserted in all but 'certain well-defined situations.'") (citation omitted). Peebles completely ignores our decision in Mark.
¶ 120. The problems created by Peebles' omission of a probationer's obligation to raise the Fifth Amendment privilege have been compounded by State v. Spaeth, 2012 WI 95, 343 Wis. 2d 220, 819 N.W.2d 769, which relied in part on Peebles, even though the State conceded that Spaeth's statements had been compelled and never briefed the issue of compulsion for us. See id., ¶¶ 57-58. The mistaken reasoning in Peebles is further compounded by the majority opinion herein, which repeatedly mentions Peebles' overly broad statements.[12]
C. Fifth Amendment Application
¶ 121. This case turns on Sahs' statements. Therefore, he falls into the second broad category of Fifth Amendment privilege cases, i.e., those defendants who speak and then seek to have their statements suppressed.
¶ 122. If Sahs' statement was voluntarily made, no self-executing Fifth Amendment privilege arises that *681 precludes the statement's use in a subsequent criminal case, unless the circumstances under which the statement was made meet one of Murphy's or Cunningham's well-defined exceptions to the obligation to raise the privilege. See Murphy, 465 U.S. at 427. The Murphy! Cunningham exceptions are: (1) a probationer is in custody while questioned without Miranda warnings; (2) a probationer is threatened with significant sanctions if he remains silent.
¶ 123. I conclude that Sahs' oral statement to Krause was voluntarily made. There is nothing in the record that supports the conclusion that Sahs' oral statement to Krause was compelled. First, Sahs contacted Krause and asked to meet with him. Second, their meeting was scheduled on a mutually convenient date. Third, they met in Krause's office and Sahs was not in custody. Fourth, there is nothing in the record to show that Sahs' statements were made in response to Krause's questions about pending charges or accusations of particular criminal activity. Fifth, there is nothing in the record to show that Sahs raised his privilege and that Krause threatened to impose economic or other sanctions capable of forcing self-incrimination. Sixth, there is nothing in the record to show that Sahs' probation was conditioned on his waiving his Fifth Amendment privilege.
¶ 124. That Sahs was required by the conditions of probation to give truthful answers, if he chose to speak, is no different from the obligations one has when subpoenaed to appear before a grand jury. If one chooses to speak before a grand jury to which he has been subpoenaed, one must speak truthfully. Accordingly, I conclude that Sahs' oral statement to his probation agent was voluntarily made and may be used against him in a subsequent criminal case.
*682 III. CONCLUSION
¶ 125. Sahs' incriminating, oral statement to his probation agent, made when he was not in custody, was voluntarily made without a threat by his probation agent. Accordingly, his statement was not compelled and his Fifth Amendment privilege against self-incrimination for the crime he disclosed was not self-executing. See Murphy, 465 U.S. at 436.
¶ 126. In conclusion, I write to confirm for the reader that the majority opinion does not rest on the Wisconsin Constitution, but rather, that it is based solely on the Fifth Amendment of the United States Constitution, which is the only constitutional provision that the parties argued before us. I also write to draw together foundational principles that control when the Fifth Amendment privilege against self-incrimination becomes self-executing for probationers and to draw attention to unduly broad statements in some opinions that could cause confusion if the statements were applied without a thorough consideration of all underlying legal principles. Because my analysis differs from the majority opinion's analysis but also results in the conclusion that Sahs' oral statement was not compelled, I do not join the majority opinion, but respectfully concur.

 Even though Sahs argued hoth state and federal constitutional provisions in his motion to the circuit court, majority op., ¶ 4, he has not done so before us.

 Because the record does not contain the DOC form, and because there is no contention that the written statement somehow modified Sahs' earlier statement, I confine my subsequent discussion to Sahs' oral statement to his probation agent.

 Miranda v. Arizona, 384 U.S. 436 (1966), concludes that a suspect has the right to remain silent and to have an attorney present for any questioning. The warnings arising from Miranda also caution that any statements the suspect makes can be used against him or her.

 The Fifth Aonendment to the United States Constitution provided in relevant part: "No person ... shall be compelled in any criminal case to be a witness against himself."

 Kastigar v. United States, 406 U.S. 441 (1972), established the scope of Fifth Amendment immunity as "use-immunity," which is immunity for the use and derivative use of compelled testimony that is incriminating. Id. at 453. Use-immunity contrasts with "transactional immunity," which is absolute immunity from prosecution for the crime to which the compelled, incriminating testimony relates. Id. However, Kastigar did not address the criteria to be applied when determining whether testimony was compelled.

 It is the ability of the probation agent to require attendance at meetings and to require truthful answers to questions the agent asks that is most often cited in Fifth Amendment cases where the defendant is on probation. It is important to note that the United States Supreme Court has held that those facts are insufficient to cause the Fifth Amendment privilege against self-incrimination to be self-executing. Minnesota v. Murphy, 465 U.S. 420, 431 (1984).

 Peebles was subject to "Rules of Community Supervision" that provided his probation "may be revoked," but did not require revocation if Peebles did not comply with the rules stated therein. State v. Peebles, 2010 WI App 156, ¶ 3, 330 Wis. 2d 243, 792 N.W.2d 212.

 No petition for review was filed in Peebles.

 The court did correctly explain that there would have been no Fifth Amendment violation if the sole potential consequence of admissions in regard to criminal conduct were the revocation of probation. Id., ¶ 26 (citing State v. Carrizales, 191 Wis. 2d 85, 97, 528 N.W.2d 29 (Ct. App. 1995). Stated otherwise, Carrizales explains that the use of a probationer's silence in noncriminal probation proceedings raised no Fifth Amendment issues. Id.

 The United States Supreme Court explained,
Murphy was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination.
Murphy, 465 U.S. at 427 (emphasis added).

 In Lefkowitz v. Cunningham, 431 U.S. 801 (1977), removal from office was absolute if the Fifth Amendment privi *680 lege was not waived. Cunningham, Id. at 809. By contrast, revocation of probation was only a possibility for Peebles. Peebles, 330 Wis. 2d 243, ¶ 3.

 Majority op., ¶¶ 67-72.